(829 P.2d 618)
No. 66,659 ■

In the Matter of the Estate of FLOYD E. PENNINGTON, Deceased.

Opinion filed April 10, 1992.

*Terry E. Cordes,* of Good and Cordes, of Meade, and *Terry S. Stephens,* of Stinson, Lasswell & Wilson, of Wichita, for appellants Robert L. Pennington and Galen L. Friesen.

*David H. Snapp,* of Minner & Waite, of Dodge City, for appellee Chester L. Pennington.

Before LARSON, P.J., PIERRON, J., and JAMES J. NOONE, District Judge Retired, assigned.

PIERRON, J.: Floyd E. Pennington died on March 29, 1990. His will was admitted to probate and notices were given to creditors by publication as prescribed by statute. Additionally, notice was mailed to known creditors by the Co-Administrators C.T.A., (administrators) as prescribed by K.S.A. 1991 Supp. 59-709(b). Notice was not mailed to decedent's nephew Chester Pennington, a person that the administrators deemed had only a conjectural claim. The trial court allowed Chester Pennington to file a claim out of time and the administrators appealed on behalf of the Estate of Floyd E. Pennington.

Chester Pennington had business dealings with the decedent in the 1960's leading to a lawsuit by Chester Pennington against the decedent in 1974. That lawsuit was dismissed without prej-

udice. Prior to his death, the decedent had been the subject of a guardianship and conservatorship. One of the conservators is also one of the administrators. Chester Pennington filed an oral claim in the guardianship and conservatorship based on a September 10, 1969, contract. An interim report to the court, advising the court of Chester Pennington's oral claim, was filed on November 16, 1989.

The administrators do not deny that they knew Chester Pennington was unhappy with the results of his business dealings with the decedent. They also acknowledge knowing he wanted to pursue a claim based on the 1969 contract, but they did not mail notice to him.

In arguments on this issue before the trial court, the attorney for the Estate of Floyd Pennington said:

"The question is then: was Chet Pennington known or reasonably ascertained to have a claim? The answer to that is no. There has been some discussions about possible interests he might have. The administrators of the estate brought that to the attention of Mr. Meyers and myself. We went back and looked at the old case that had been previously litigated on this matter and discovered that it has been dismissed. In our mind, in our legal opinion, we told the administrators 'it's been adjudicated. You don't have anything to worry about.' "

The administrators do not deny that they never mailed notice to Chester, nor do they contend that they orally advised him that he needed to file a claim in the estate within a certain time limit. The administrators do assert that Chester Pennington knew of his uncle's death and attended all of the probate hearings and, therefore, had the actual notice that K.S.A. 1991 Supp. 59-2236(b) requires. The administrators also assert that Chester had actual notice because he was responsible for overseeing his father's affairs and actual notice was mailed to his father (decedent's brother). The trial judge refused to allow that assertion to be a part of his ruling as there was no evidence concerning whether Chester advised his father or handled his father's affairs. As there is no evidence in the record to support appellants' assertion, this court also must refuse to consider it.

The first issue to be addressed is whether the personal representative of an estate, in giving the required actual notice to

known creditors may decide not to give notice to parties whose claims the personal representative deems doubtful or conjectural.

The second issue is whether the claimant received actual notice because he knew of the death and attended several probate hearings involving the decedent's estate.

Essentially, both issues call upon this court to construe K.S.A. 1991 Supp. 59-709(b) and K.S.A. 1991 Supp. 59-2236(b). These statutes, as amended in 1989, have not been construed before in Kansas and, therefore, their construction is a matter of first impression. As statutory construction is a question of law, it is subject to this court's unlimited review. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P. 2d 1303 (1984); *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

Our function is clear.

"The fundamental rule of statutory construction, to which all others are subordinate, is that the intent of the legislature governs; the court must give effect to the legislature's intent 'even though words, phrases or clauses at some place in the statute must be omitted or inserted.' [Citations omitted.] In determining legislative intent, courts are not limited to consideration of the language used in the statute, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. [Citations omitted.] Ordinarily, courts presume that by changing the language of a statute the legislature intends to change its effect. This presumption, however, may be strong or weak according to the circumstances, and may be wanting altogether in a particular case. [Citation omitted.]" *Citizens State Bank of Grainfield v. Kaiser*, 12 Kan. App. 2d 530, 536, 750 P.2d 422, *rev. denied* 243 Kan. 777 (1988).

In the first issue, this court must determine whether personal representatives of estates must send actual notice of the fact that a will has been probated and that there is a time limitation on filing claims to parties that the administrators believe do not have valid claims. There is no contention that Chester was not known to the administrators, nor is there any contention that they could not have found his address. Essentially they believe his claim was something upon which he would not be able to recover. Therefore, the administrators contend, because of his conjectural

claim, Chester did not amount to a " 'known' creditor," as that term is applied in K.S.A. 1991 Supp. 59-709.

"Creditor" is defined by Black's Law Dictionary 368 (6th ed. 1990) as:

"A person to whom a debt is owing by another person who is the 'debtor.' [Citation omitted.] . . .

"The word is susceptible of latitudinous construction. In its broad sense the word means one who has any legal liability upon a contract, express or implied, or in tort; in its narrow sense, the term is limited to one who holds a demand which is certain and liquidated."

Obviously the administrators would like to construe creditor in the narrowest sense of the word.

K.S.A. 1991 Supp. 59-709 does not define creditor or known creditor. Subsection (b) of the statute, added by the legislature in 1989 in response to *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988), uses the terms in its requirement for actual notice: "The personal representative of a decedent's estate shall give actual notice to known or reasonably ascertainable creditors prior to the expiration of the nonclaim statute." K.S.A. 1991 Supp. 59-709(b).

The United States Supreme Court held in *Pope* that if a creditor's identity was known or "reasonably ascertainable" by the administrators of a decedent's estate, the Due Process Clause of the Constitution requires that the creditor be given notice by mail or such other means as is certain to insure actual notice.

The Court found that an Oklahoma statute (nearly identical to the Kansas nonclaim statute before its 1989 amendment), which required only publication notice of the fact that a probate estate had been opened and which then barred claims not filed within a certain time limit, did not meet the standards of due process previously enunciated by the Court. The Court found that publication notice is not reasonably calculated to apprise interested parties of the action and to afford them an opportunity to make known their claims. The Court said:

"Providing actual notice to known or reasonably ascertainable creditors, however, is not inconsistent with the goals reflected in nonclaim statutes. Actual notice need not be inefficient or burdensome. We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice. . . . Nor is everyone who may conceivably have a claim, properly considered a creditor entitled to

actual notice. Here, it is reasonable to dispense with actual notice to those with mere 'conjectural' claims." 485 U.S. at 489-90.

The Court in *Pope* relied heavily on *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 94 L. Ed. 2d 865, 70 S. Ct. 652 (1950), and *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 77 L. Ed 2d 1383, 103 S. Ct. 3530 (1983), in holding as it did. The appellant would like us to rely on some comments by the Court in *Pope, Mullane*, and *Mennonite* to find that the claim of Chester was merely conjectural and, therefore, not entitled to actual notice. While the *Pope* Court did say that not everyone who might conceivably have a claim is properly considered to be a creditor and entitled to actual notice, it was referring back to a similar comment in *Mullane*. The original comment by the *Mullane* court was:

"Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee. Whatever searches might be required in another situation under ordinary standards of diligence, in view of the character of the proceedings and the nature of the interests here involved we think them unnecessary. We recognize the practical difficulties and costs that would be attendant on frequent investigations into the status of great numbers of beneficiaries, many of whose interests in the common fund are so remote as to be ephemeral; and we have no doubt that such impracticable and extended searches are not required in the name of due process. *The expense of keeping informed from day to day of substitutions among even current income beneficiaries and presumptive remaindermen, to say nothing of this far greater number of* contingent beneficiaries, would impose a severe burden on the plan, and would likely dissipate its advantages." *Mullane,* 339 U.S. at 317-18. (Emphasis added.)

When the Court spoke about conjectural claims in *Mullane*, it was talking about interests of parties who were difficult to determine. *Mullane* concerned a trust fund that itself held many smaller trusts and estates. This pooling of small trusts and estates enabled them to take advantage of risk diversification and economical management generally available only to large trust funds. As this was the nature of the property in *Mullane*, it necessarily involved many parties who were distantly related to the parties in question. It involved substitutions of current income beneficiaries, presumptive remaindermen, and contingent beneficiaries.

The Court discussed what searches might be required and determined that it is not necessary to engage in such in-depth searches to meet the standards of due process.

The facts in *Mullane* are entirely different from the instant case. Chester was a known person. His address was known to the administrators. He had personally talked to the administrators about his claim. He was not a contingent beneficiary or a presumptive remainderman. While his status did not amount to a judgment creditor, Chester and his claim were reasonably ascertainable. The United States Supreme Court has repeatedly held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite,* 462 U.S. at 800.

The United States Supreme Court's negative opinion of publication notice because of its inadequacy and inefficiency is well known and will not be further discussed here. The administrators had knowledge of Chester's oral claim and they had knowledge of his address. The statute does not confer upon the administrators the discretion to mail notice only to creditors whom the administrators believe have good claims. The statute prescribes the duty to give actual notice to known or reasonably ascertainable creditors prior to the expiration of the nonclaim statute. If Chester has a valid claim against Floyd Pennington, then his interest will be forever barred if he does not file a claim in the probate estate within the time limit. Therefore, he should have received actual notice.

The second issue is whether the claimant received actual notice because he knew of the death and attended several probate hearings involving the decedent's estate.

The administrators suggest that if this court finds the claimant was statutorily required to receive actual notice, this court should also find he had actual notice because he knew of his uncle's death and attended several probate hearings. It is not disputed that Chester Pennington knew of his uncle's death and attended several probate hearings. Does that in fact amount to actual notice?

First, let us clearly state that actual notice is not limited to notice by mail. If the administrators had orally notified Chester that he only had four months to file his claim from the date of the first publication and given him the notice that is required to be conveyed by K.S.A. 1991 Supp. 59-2236(a), that probably would comport with the statutory definition of actual notice in K.S.A. 1991 Supp. 59-2236(b). However, there does not appear to be any evidence in the record that the administrators did in fact give oral notice to Chester. The claimant asserts in his brief that no oral notice was given to him that his claim had to be filed within four months of the publication date. The administrators do not contest that.

The administrators do suggest no statute requires that the notice to known creditors contain the time limit. K.S.A. 1991 Supp. 59-2236(a) specifies what must be included in the publication notice and (b) states the actual notice that is required by 59-709(b) may include, but is not limited to, mailing a copy of the published notice to the creditors. The reasonable construction of that statute would suggest that actual notice needs to include what the publication notice is required to include.

Certainly, if we go back to *Pope* to determine what the Supreme Court meant by actual notice, it would appear it found that known or reasonably ascertainable creditors must be notified there is a legal proceeding in a certain court which may affect their interest and in which they have only a certain time to present their objections and/or claims. It is not unreasonable to conclude that K.S.A. 1991 Supp. 59-2236(b) and/or K.S.A. 1991 Supp. 59-709(b) requires that actual notice follow what is required by *Pope*.

The administrators cite *Mo. Highway & Transp. Com'n v. Myers*, 785 S.W.2d 70 (Mo. 1990), to bolster their contention that Chester had adequate notice through knowledge of the death and his presence at the probate hearings. *Myers* involved several prior cases in which a Missouri Highway and Transportation Commission petitioned to condemn certain property in 1970. Apparently, the commissioners overvalued the landowners' damages. A jury determined the landowners had been overpaid by $237,000. Many lawsuits were filed in an attempt to get the landowners to repay that money.

The Commission attempted to claim against the estate of Flora Myers, the wife of the original landowner who was deemed to owe the $237,000. Flora died during the pendency of the litigation. The trustee, decedent's son, served the Commission with copies of the death certificate and moved to substitute himself in his capacity as executor as a party in the litigation in place of his mother. The Commission did not, however, file a claim in the probate court, even though the Commission had "at least constructive notice of the administration of the decedent's estate." 785 S.W.2d at 72.

The Missouri Supreme Court found that the Commission had received actual notice of the essential facts because the notice of letters was published four consecutive weeks, and the Commission was advised of the pending estate several times long before the six-month limitation period expired. "The flow of information provided the creditor constituted 'actual notice' and the months of inaction thereafter go unexplained." 785 S.W.2d at 75.

While the administrators here would have us find that the Missouri Supreme Court held general knowledge constituted actual notice, what the court found was that the creditor had received *actual notice* in accordance with the standards enunciated by the United States Supreme Court in *Pope*. The Missouri Supreme Court further held that because the claimant knew it was a claimed creditor of Flora Myers, knew she had died, and knew her estate had been opened, etc., this was not a lack of actual notice as the creditor claimed. Concerning knowledge of the claims deadline, the court said that persons are conclusively presumed to know the law. While the administrators have persuasively cited this portion of the opinion, they failed to put it into context. Immediately following, the court explained:

"The Commission had 'actual notice' of the essential facts and was represented by counsel at every stage in this protracted litigation. It defies credulity to suggest that the Commission, with its continual involvement in legal proceedings and its ready reliance on ever available in-house and special counsel, can claim it did not know and was somehow unable to ascertain the effect of the statutes limiting the time for and proper manner of processing its claim." 785 S.W.2d at 75.

Clearly the claimant in the instant case did not have in-house or special counsel and was not involved in numerous legal proceedings.

The administrators would have this court hold that one who might know of the death of the decedent and who attends probate proceedings is bound to be on notice that he or she needs to inquire about a time limit to file a claim. The construction suggested by the administrators could lend itself to abuse and could prevent the sureness of notice the statutes intend.

The administrators are bound by the statute to give actual notice to known creditors. The statute does not give the administrators discretion in determining who has a good claim; generally, the trial judge determines which claims are valid. The statute does not say creditors with knowledge of the death are presumed to be on notice. The United States Supreme Court held in *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, that parties who have a claim must be advised of the fact that they need to file that claim within a certain time limit. To interpret the statute the way the administrators would suggest would ignore the message the Supreme Court issued in *Pope*.

Affirmed.