Nos. 79,619
79,953

In the Matter of the ESTATE OF JAMES DANIEL HENRY
REYNOLDS, JR., M.D., Deceased.
(970 P.2d 537)

Opinion filed December 18, 1998.

*John E. Bordeau*, of Norris, Keplinger & Logan, L.L.C., of Overland Park, argued the cause, and *Bruce Keplinger*, of the same firm, was with him on the briefs for appellant Marine Midland Bank, N.A.

*Clarence R. Wietharn*, of Overland Park, argued the cause and was on the brief for appellee UMB Bank, N.A., executor of the estate of James Daniel Henry Reynolds, Jr.

The opinion of the court was delivered by

ABBOTT, J.: The above cases have been consolidated for appeal. Both cases involve the estate of James Daniel Henry Reynolds, Jr. Case No. 79,619 involves K.S.A. 59-2239 (the nonclaim statute) and the trial court's refusal to enforce a New York court's judgment against the estate of a Kansas decedent, James Daniel Henry Reyn-

olds, Jr. Case No. 79,953 is an appeal from the trial court's order allowing an interim executor and attorney fees. The appellant, Marine Midland Bank, N.A., (Marine) is the successor in interest to Integrated Resources, Inc. (Integrated).

On August 31, 1986, the decedent executed a negotiable promissory note, together with a subscription agreement and security agreement, for the purchase of an interest in a Connecticut limited partnership. The contract provided New York law would govern any action brought to enforce the contract's provisions. The limited partnership owned a shopping center in Brentwood, Tennessee. Integrated was the holder of the promissory note. Five months later, on the date the first payment was due under the note, the decedent was killed in an airplane accident.

The decedent was a resident of Johnson County, Kansas. A petition for probate of will and issuance of letters testamentary was filed in the Johnson County District Court. An order for hearing and for notice to creditors was entered. Pursuant to the will, United Missouri Bank, N.A., (UMB) was appointed executor of the estate.

On February 26, 1987, less than 1 month after decedent's death, UMB wrote to Integrated and advised it of the death and asked that any action on the payments of the note be postponed for 30 days until an executor could be appointed and sufficient assets gathered to make the payment. In March 1987, UMB published a "Notice to Creditors" in a Kansas semi-weekly newspaper, informing creditors of the estate that they must exhibit their demands by filing a claim with the Kansas probate court by July 1987 or their claims would be barred under the Kansas nonclaim statute then in effect, K.S.A. 1986 Supp. 59-2239.

In 1987, there was no statutory or case law requiring that a copy of the "Notice to Creditors" be mailed to creditors whose names and addresses were known or reasonably ascertainable. It was not until 1989 that Kansas followed *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988), in the case of *In re Estate of McDowell*, 245 Kan. 278, 280, 777 P.2d 826 (1989). That same year, the Kansas Legislature amended the nonclaim statute to comport with *Tulsa* and *McDowell*. All parties concede no "Notice to Creditors" was mailed to Integrated,

nor was the nonclaim statute drawn to Integrated's attention by UMB prior to the expiration of the time allowed for filing of claims against the estate.

On April 6, 1987, UMB again contacted Integrated and asked it to "hold off any action" on payments due on the note. On May 28, 1987, the overdue first payment, along with a late charge, was made to Integrated. Twenty-five payments were due on the note. UMB, as executor, made 18 payments between May 1987 and July 1991. The shopping center became bankrupt, and the investment became worthless.

In October 1987, the negotiable promissory note was assigned by Integrated to Marine. It is of no importance to this decision, but the partnership apparently assigned the note and the security agreement to a third party who assigned them to Marine. After the investment became worthless, UMB stopped making payments because no claim had ever been filed against the estate and took the position that Marine's claim was barred by the Kansas nonclaim statute.

Approximately 2 years after UMB stopped payments, Marine commenced an action in the New York Supreme Court (the equivalent of our Kansas district courts). That action was dismissed for Marine's failure to file a claim in Kansas in a timely fashion. That decision was appealed to the Appellate Division of the New York Supreme Court (comparable to our Kansas Court of Appeals). That court ruled that the choice of law provision in the limited partnership documents made New York law applicable, and, hence, there was no need to be concerned about the Kansas nonclaim statute. The Appellate Division of the New York Supreme Court also concluded that the same contractual choice of law provision gave it both personal and subject matter jurisdiction. The New York Court of Appeals (comparable to our Kansas Supreme Court) denied the estate's petition to review the decision on May 28, 1996. *Marine Midland Bank v. UMB*, 223 App. Div. 2d 119, 643 N.Y.S.2d 528 (1996). Judgment was subsequently entered in the amount of $123,498.21 on September 4, 1996.

This judgment was filed in the Johnson County District Court on September 10, 1996. Marine then, as a judgment creditor seek-

ing to enforce its New York judgment against the assets of the estate, applied to the Johnson County Probate Court in the estate proceeding.

Judge Samuel K. Bruner, the trial judge, stated in his opinion that the "estate does not contest the validity of the judgment but argues that same is not enforceable against assets of the estate." He found that "[n]o previous demand had been filed by either Integrated or [Marine], contingent or otherwise, in the estate . . . ."

Judge Bruner also held:

"I have reviewed the various arguments and precedent presented in trial briefs to the Court. In my review I became convinced that the issue that was determinative was the matter of the statute of limitations imposed by Kansas law in decedent's estates. Resolution of the controversy is made more complex due to the time frame within which the underlying facts evolved.

"[*Tulsa Professional Collection Services*] v. *Pope*, 485 U.S. 478 (1989), set off a flurry of state legislative action and the always certain judicial determinations followed. We know that *Pope* is entitled to retroactive application. We know that actual notice to known or reasonably ascertainable creditors is required. We know that can be accomplished by mailing to the creditor a copy of the published notice to creditors and filing an affidavit of service. We also know that mailing of the newspaper clipping is not the only manner in which the notice can be conveyed. We also have some reason to believe that the sophistication of the creditor is of import. We have learned more about the relationship between Chapter 60 and Chapter 59 in the resulting litigation. [Marine] and Integrated were aware of the death of Dr. Reynolds and the procedures being undertaken in Kansas by the nominee of his Last Will and Testament before the case was commenced in Kansas. After appointment and qualification as executor, the creditor received and credited over $100,000.00 in payment from [Marine] yet never filed a contingent demand in this Court.

"The fact that the estate of Dr. Reynolds remains open and has assets that could apply to the judgment is of no consequence in this controversy. That fact was occasioned by separate litigation between the estate and Dr. Reynolds' former employer and the rigors of other administrative problems.

"[Marine] argues that after receipt of over $100,000.00 in periodic payments made until 1991 the estate is estopped from arguing the statute of limitations. The executor was protecting an asset of Dr. Reynolds and until the asset proved to be worthless could have reasonably been expected to continue payments. To have continued to make payments beyond the time of Integrated's insolvency would have been at best unwise and more likely an imprudent fiduciary act.

"It is my conclusion that a sophisticated creditor had actual notice of the death of the debtor and the probate proceeding in the domicile of the decedent and failed to file a demand within the appropriate statute of limitations and is therefore barred from asserting the judgment as a claim against the estate."

Judge Bruner later allowed the payment of fees and expenses to the executor and various law firms over Marine's written and oral objections. The funds in the estate were insufficient to pay Marine's judgment prior to the allowance of executor and attorney fees and expenses. Marine separately appealed Judge Bruner's order denying the enforcement of Marine's New York judgment and the order allowing the payment of fees and expenses. Upon consolidation, Marine's appeal was transferred to this court at Marine's request pursuant to Rule 8.02 (1998 Kan. Ct. R. Annot. 33) and K.S.A. 20-3017.

Marine raises three issues on appeal. They are:

I. The trial court erred when it failed to give full faith and credit to the New York judgment.
II. The decision of the trial court violated the Due Process Clause because the Kansas nonclaim statute has been found to be unconstitutional.
III. The trial court erred in granting interim expenses because most of the expenses were incurred due to the imprudent actions of the executor in failing to make the final payments on the note.

We are aware of the traditional rules concerning the Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution and specifically the general rule that "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke*, 375 U.S. 106, 111, 11 L. Ed. 2d 186, 84 S. Ct. 242 (1963).

The *Durfee* court noted there are exceptions to that rule. 375 U.S. at 114. Restatement (First) of Conflict of Laws § 451(2) (1948 Supp.) states:

"Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction. Among the factors appropriate to be considered in determining that collateral attack should be allowed are that

(a) the lack of jurisdiction over the subject matter was clear;

(b) the determination as to the jurisdiction depended upon a question of law rather than of fact;

(c) the court was one of limited and not of general jurisdiction;

(d) the question of jurisdiction was not actually litigated;

(e) the policy against the court's acting beyond its jurisdiction is strong."

See Restatement (First) of Conflict of Laws § 306 (1948 Supp.). Even more persuasive is Restatement (First) of Conflict of Laws § 513, which provides:

"The appearance of a foreign administrator in a suit brought against him in his representative capacity or in an action begun against the decedent in his lifetime and continued against such foreign administrator, does not render a judgment in such suit provable there or elsewhere as a claim against the estate."

The comment to § 513 provides the rationale for this rule and states:

"While the appearance of an individual in an action gives a court personal jurisdiction over him . . . , the administrator, whose duty it is to administer the estate of the decedent under the control of the court which appointed him, cannot by appearance in an action elsewhere, subject the disposition of the estate which he is administering to the orders of a foreign court."

In the case of *In re Estate of Watson*, 21 Kan. App. 2d 133, Syl. ¶ 5, 896 P.2d 401 (1995), the court stated:

"K.S.A. 59-2239 is a special statute of limitations. The words 'all demands' are all-inclusive and include claims and demands of every type and character against a decedent's estate except for those particular cases where the statute expressly provides otherwise. A party seeking to remove something from a decedent's estate must comply with the nonclaim statute in the absence of an express statutory exception such as set forth in K.S.A. 59-2239(2)."

Also, in *Union Nat'l Bank & Trust Co. v. Estate of Werning*, 233 Kan. 671, 675, 665 P.2d 192 (1983), the court stated:

" 'All demands' is certainly broad language. As noted in 3 Bartlett, Kansas Probate Law and Practice § 1316 (Rev. ed. 1953):

'The language of the nonclaim statute is clear, unambiguous, and comprehensive. Words more significant to express every demand to which a personal representative can or ought to respond, or which can charge the assets in his hands subject to administration, or more expressive of every liability, resting upon the decedent, could not have been employed.' "

We believe the full faith and credit argument to be controlled by the specific rules of law of probate and decedent's estates, rather than in terms of subject matter jurisdiction generally. Also, the defense of a nonclaim statute generally cannot be waived by the executor. *Gano Farms, Inc. v. Estate of Kleweno*, 2 Kan. App. 2d 506, 508, 582 P.2d 742, *rev. denied* 225 Kan. 844 (1978).

We thus hold that the trial court did not err in holding that the Full Faith and Credit Clause did not require the executor to pay the judgment out of the assets of the estate. The issue then becomes whether the trial court correctly decided that collection of the judgment is barred by the Kansas nonclaim statute.

K.S.A. 59-2239 provides, in pertinent part:

"(1) All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor or indemnitor, and including the individual demands of executors and administrators, not exhibited as required by this act within four months after the date of the first published notice to creditors as herein provided, shall be forever barred from payment, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control."

Nonclaim statutes are considered jurisdictional, and a creditor's noncompliance with the nonclaim statute means that the district court should disallow any claim not filed within the time limit. This rule is inapplicable, however, if the court finds fraud or other unconscionable conduct. *Salvation Army v. Estate of Pryor*, 1 Kan. App. 2d 592, 570 P.2d 1380 (1977).

In *Egnatic v. Wollard*, 156 Kan. 843, 856, 137 P.2d 188 (1943), the court stated:

"[W]hen a person dies his individual capacity to respond in damages for his torts, to pay his debts, to carry out his contracts, and to distribute his estate ceases.

"Thereafter his financial obligations must be met by his estate. One who deems himself entitled to a part or all of such an estate, whether the right contended for is founded in tort, or upon oral or written contract, or under the will of the decedent, or under the statute of intestate succession, must recover, if at all, from the decedent's estate. Under our probate code the probate court is made the forum for the transaction of this business, and it is given original jurisdiction to probate the will, if decedent left one, to appoint an executor or an administrator of his estate, to require an inventory and appraisement of the assets of the estate, to hear the petition of anyone who claims all or any part of the estate, after due notice to all parties interested so each may have his day in court, and ultimately to settle the accounts of the executor or administrator and to disburse the estate to those legally entitled thereto."

The legislature amended K.S.A. 59-709(b) in 1989 in response to *Tulsa Professional Collection Services v. Pope*, 485 U.S. 478. In *Pope*, the Court analyzed whether an Oklahoma statute providing for notification to creditors solely by publication satisfied the Due Process Clause. Oklahoma's nonclaim statute required the executor of an estate to give notice to the deceased's creditors that any claim against the estate must be presented to the executor within 2 months of the date of the first notice by publication. The Oklahoma statute required publication in some newspaper in the county once each week for 2 consecutive weeks.

The *Pope* Court acknowledged that most states had provisions whereby creditors are to be notified of the requirement to file claims imposed by the nonclaim statutes solely by publication, but held that "a requirement of actual notice to known or reasonably ascertainable creditors is not so cumbersome as to unduly hinder the dispatch with which probate proceedings are conducted." 485 U.S. at 490. Thus, if a creditor's identity is known or reasonably ascertainable, the Due Process Clause of the United States Constitution requires that the creditor be given notice by mail or such other means as to insure actual notice. 478 U.S. at 491.

The trial court correctly acknowledged that *Pope* is entitled to retroactive application, and, thus, actual notice to known or reasonably ascertainable creditors was required. Obviously, Marine was a known creditor. The trial court found that the notice requirement had been satisfied because Marine and Integrated were aware of Reynolds' death and they were aware of "the procedures

being undertaken in Kansas by the nominee of his Last Will and Testament." Further, the trial court ruled that Marine was a sophisticated creditor having "actual notice of the death of the debtor and the probate proceeding in the domicile of the decedent and failed to file a demand within the appropriate statute of limitations and is therefore barred from asserting the judgment as a claim against the estate."

In the case of *In re Estate of Pennington*, 16 Kan. App. 2d 792, 829 P.2d 618 (1992), Floyd Pennington died in March 1990, his will was admitted to probate, and notices were given to creditors by publication as mandated by statute. Also, notice was mailed to known creditors by the administrators, as required by K.S.A. 1991 Supp. 59-709(b). Prior to his death, Pennington had been the subject of a guardianship and conservatorship. One of the conservators was also one of the administrators. Chester Pennington, decedent's nephew, filed an oral claim in the guardianship, based on a 1969 contract. An interim report to the court advising the court of Chester's oral claim was filed in November 1989. The administrators did not deny that they knew Chester wanted to pursue a claim based on the 1969 contract. They asserted, however, that they did not mail notice to him because they deemed that he only had a conjectural claim. The trial court allowed Chester to file a claim out of time, and the administrators appealed on the behalf of Pennington's estate.

The administrators asserted that Chester "knew of his uncle's death and attended all of the probate hearings and, therefore, had the actual notice that K.S.A. 1991 Supp. 59-2236(b) requires." 16 Kan. App. 2d at 793. The *Pennington* court ruled that "[u]nder K.S.A. 1991 Supp. 59-709(b) and K.S.A. 1991 Supp. 59-2236(b), administrators are not allowed to determine which claims against an estate may or may not be valid for purposes of giving notice to creditors." 16 Kan. App. 2d 792, Syl. ¶ 1. The court explained:

"Chester was a known person. His address was known to the administrators. He had personally talked to the administrators about his claim. He was not a contingent beneficiary or a presumptive remainderman. While his status did not amount to a judgment creditor, Chester and his claim were reasonably ascertainable. The United States Supreme Court has repeatedly held that '[n]otice by mail or other

means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interest of any party, whether unlettered *or well versed in commercial practice*, if its name and address are reasonably ascertainable.' *[Mennonite Board of Missions v. Adams*, 462 U.S. 791, 800, 77 L. Ed. 2d 1383, 103 S. Ct. 3530 (1983)]." (Emphasis added.) 16 Kan. App. 2d at 797.

The *Pennington* court held:

"[L]et us clearly state that actual notice is not limited to notice by mail. If the administrators had orally notified Chester that he only had four months to file his claim from the date of the first publication and given him the notice that is required to be conveyed by K.S.A. 1991 Supp. 59-2236(a), that probably would comport with the statutory definition of actual notice in K.S.A. 1991 Supp. 59-2236(b). However, there does not appear to be any evidence in the record that the administrators did in fact give oral notice to Chester. The claimant asserts in his brief that no oral notice was given to him that his claim had to be filed within four months of the publication date. The administrators do not contest that.

"The administrators do suggest no statute requires that the notice to known creditors contain the time limit. K.S.A. 1991 Supp. 59-2236(a) specifies what must be included in the publication notice and (b) states the actual notice that is required by 59-709(b) may include, but is not limited to, mailing a copy of the published notice to the creditors. The reasonable construction of that statute would suggest that actual notice needs to include what the publication notice is required to include.

"Certainly, if we go back to *Pope* to determine what the Supreme Court meant by actual notice, it would appear it found that known or reasonably ascertainable creditors must be notified there is a legal proceeding in a certain court which may affect their interest and in which they have only a certain time to present their objections and/or claims. It is not unreasonable to conclude that K.S.A. 1991 Supp. 59-2236(b) and/or K.S.A. 1991 Supp. 59-709(b) requires that actual notice follow what is required by *Pope*." 16 Kan. App. 2d at 798.

This court granted a petition for review of *Pennington* in June 1992, but before the court heard arguments in the case, the parties settled. Thus, a motion to dismiss the petition for review was granted because the settlement rendered moot the issues raised on appeal.

UMB cites the case of *In re Estate of Ragsdale,* 19 Kan. App. 2d 1084, 879 P.2d 1145 (1994), as authority that UMB was not required to do anything more than it did to provide notice to the known creditor. The *Ragsdale* court stated:

"[A]t the time the original notice to creditors was published, [claimant] could not have been a reasonably ascertainable creditor as defined in *Pope* and *Pennington* as far as actual notice is concerned. In *Pennington*, the claimant knew of the death of the decedent, had attended some of the hearings, and was unrepresented. In this case, [claimant] had been in the case from the outset, had the guiding hand of counsel, was involved in numerous hearings, *and had herself caused a notice to creditors to be published.*

"Under the facts as exist here, we hold that at the time the notice to creditors was published, [claimant] was not a reasonably ascertainable creditor *and*, further, that [claimant] had actual knowledge of the notice to creditors. Her failure to timely file the claim was not the result of the insufficiency of the actual notice but the result of her failure to timely file a claim on the notice received." (Emphasis added.) 19 Kan. App. 2d at 1086.

We do not see a conflict between *Pennington* and *Ragsdale* and adopt the reasoning and law therein. Here, the record is void of any evidence that Marine was ever notified that it had 4 months to file a claim. Clearly, Marine was notified years before it filed anything against the estate that UMB was not going to pay a debt owed by the decedent because Marine had not filed a claim in the estate within 4 months as set forth in the publication notice. The fact that Marine knew UMB was refusing to pay the claim on the grounds that the nonclaim statute had run is not the same as giving notice of a date when the nonclaim statute will bar the claim. We hold that a known or reasonably ascertainable creditor of an estate must receive notice that is reasonably calculated under the circumstances to apprise an interested party of the pendency of the action and afford the party an opportunity to present its claim. See *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950). Notice of the 4-month statute of limitations is an integral part of the notice requirement. Failure to give a known creditor notice of the statute of limitations, in the absence of the creditor having actual knowledge of the statutory period under the nonclaim statute, will not bar the claim until actual notice is given to the known or reasonably ascertainable creditor. Thus, Marine's claim is not time barred because UMB has never given the constitutionally required notice.

### FEES AND EXPENSES

The standard of appellate review in determining whether the

trial court erred in granting the allowance of interim administration expenses is whether the trial court's ruling is supported by substantial competent evidence. Thus,

"[w]here the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

K.S.A. 59-1717 provides:

"Every fiduciary shall be allowed his or her necessary expenses incurred in the execution of his or her trust, and shall have such compensation for services and those of his or her attorneys as shall be just and reasonable. At any time during administration the fiduciary may apply to the court for an allowance upon his or her compensation and upon attorneys' fees."

In its objections to the petition for allowance of interim administration fees, Marine claimed that if the executor had properly managed the estate, much of the expenses for which the executor requested compensation, and all of the attorneys' expenses sought for UMB's litigation of Marine's claim in New York, would not have been necessary. Thus, Marine argued it was the executor's act of discontinuing payments on the note which caused acceleration of the note and forced Marine to file a lawsuit in New York "to collect the note as well as attorneys' fees and costs. Because it was the conduct of the executor that caused much of the fees to be incurred, the executor should not be paid as requested."

Marine further argued in its objections to the allowance of fees that

"the note in question is binding on the heirs of Dr. Reynolds. Now that the executor has caused the note to be accelerated, [Marine] will be obligated to institute litigation against the heirs to collect any deficiency that is not collected in this case. But for the conduct of the executor, no such suit would ever be necessary. But for the litigation instigated by the executor's failure to continue paying the note, there would have been sufficient assets in the estate to pay the note in full."

The trial court, however, did not find that the executor had failed to perform the duties imposed on him by ceasing payment on the note. Marine asserts that this finding was error because Mr. Buchmann, one of the attorneys involved in representing the estate, testified that he had discussed the provisions of the promissory note with the executor, and that they were both aware that ceasing to make payments on the note would expose the estate to the acceleration of the balance and a 2% interest penalty per month, in addition to potential litigation expenses. Marine contends that the executor's decision to terminate payment on the 19th of 24 payments on the note was an imprudent act, causing the estate to incur additional fees and expenses that would have been unnecessary had the note simply been paid. Thus, Marine concludes that because the New York litigation was engendered by the imprudent acts of the executor, it is inequitable to force Marine to bear the burden of the executor's acts, and the trial court erred in allowing expenses related to the New York litigation to be paid.

UMB avers that Marine's claims are not compelling and cites *Murdock v. First National Bank*, 220 Kan. 459, Syl. ¶ 3, 553 P.2d 876 (1976), in which the court stated:

"An executor has a duty to collect and preserve the assets of a decedent's estate and in so doing he may employ counsel to assist him. The necessity for the particular legal services and the reasonableness of the amount of compensation to be paid out of the estate are essentially questions of fact for the tribunal authorized to order their allowance. (Following *In re Estate of Murdock*, 213 Kan. 837, 519 P.2d 108, Syl. ¶ 10.)"

Although the executor and his attorneys knew that they were subjecting the estate to potential litigation and significant cost by discontinuing payment on the note, the executor may have deemed it in the best interests of protecting the estate's assets to cease payment. Perhaps it was a financially calculated risk to incur the cost of defense, rather than to continue to pay on a note which no longer had any value. Given the testimony of those involved, there is no indication that UMB purposefully subjected the estate to needless costs. Marine shares some of the responsibility for the estate incurring costs to defend the suit, as it should have filed a claim in the estate as opposed to a law suit in New York.

The two individuals who represented the bank's interest as executor testified that an award of fees in the amount of $6,200 had been granted for the work done relating to Reynolds' wife's estate, but that the court had not awarded any compensation for the administration of Reynolds' estate.

In conclusion, there is substantial competent evidence to support the trial court's ruling to allow attorney fees and appointment of an interim executor. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion, and a reasonable person could find such evidence to support the trial court's conclusion that the estate should pay the requested fees.

Affirmed in part and reversed in part.