(3 P.3d 568)

No. 82,950

STATE OF KANSAS, DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES; and DANIELLE S., Individually and as Parent and Next Friend of S.D.S., a Minor Child, *Appellants,* v. JOSHUA J. PAILLET, (KENNY and COLLEEN PAILLET), *Appellees.*

Opinion filed March 31, 2000.

*Grant D. Griffiths,* of Griffiths & Carroll, Chartered, of Clay Center, for appellant Danielle S.

*Robert A. Thompson,* of Salina, for appellees.

Before MARQUARDT, P.J., PADDOCK, S.J., and THOMAS H. BORNHOLDT, District Judge, assigned.

BORNHOLDT, J.: Danielle S., natural mother of S.D.S., born on March 5, 1997, appeals the trial court's order awarding Kenny and Colleen Paillet, S.D.S.'s paternal grandparents, visitation rights to S.D.S. On appeal, Danielle argues that the trial court's findings that grandparent visitation would be in the best interests of S.D.S. and that the Paillets had established a substantial relationship with S.D.S. are not supported by substantial competent evidence.

On July 29, 1997, the Department of Social and Rehabilitation Services (SRS) filed a petition on behalf of Danielle for declaration of paternity and an order of support for S.D.S. On August 14, 1997, the trial court entered a journal entry finding that Joshua J. Paillet was the natural father of S.D.S. and ordered him to pay child support.

Joshua was killed in a motor vehicle accident on July 25, 1998. On October 7, 1998, Joshua's parents, Kenny and Colleen Paillet, filed for visitation pursuant to K.S.A. 38-129 *et seq.* The Paillets' petition was filed under the same caption as the original paternity suit, with Joshua named as the respondent, although he was deceased. We view the Paillets' petition as a petition to intervene.

The trial court found that visitation by the Paillets would be in the child's best interests and that a substantial relationship between S.D.S. and the Paillets had been established. Danielle timely appeals the trial court's order.

On appeal, Danielle argues that the trial court erred in awarding the Paillets visitation rights to S.D.S. Specifically, Danielle contends that the trial court's findings are not supported by substantial competent evidence.

When sufficiency of evidence is challenged on appeal, it is the appellate court's duty to review the evidence in the light most favorable to the party prevailing below to determine whether substantial competent evidence exists to support the findings. *In re Adoption of F.A.R.*, 242 Kan. 231, 238-39, 747 P.2d 145 (1987). Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated another way,

substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *In re Estate of Reynolds*, 266 Kan. 449, 461, 970 P.2d 537 (1998).

K.S.A. 38-129 allows a trial court to award grandparent visitation:

"(a) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.

"(b) The district court may grant the parents of a deceased person visitation rights, or may enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act."

It is clear from the statute that when a parent is deceased, grandparent visitation may be ordered upon a finding that visitation is in the child's best interests and when a substantial relationship between the child and the grandparents has been established. The trial court must make these findings before grandparent visitation is granted. *Santaniello v. Santaniello*, 18 Kan. App. 2d 112, 114, 850 P.2d 269 (1992).

In making its ruling from the bench, the trial court stated that S.D.S. should have a relationship with both sides of her family. The trial court noted in the journal entry that "visitation by the paternal grandparents would be in the child's best interest and that a substantial relationship between the child and paternal grandparents has been established."

A similar presumption was made by the trial court in *Santaniello*. This court held in *Santaniello* that a trial court "may not presume that grandparent visitation is in a child's best interests or that a substantial grandparent-grandchild relationship exists. The burden of proof is upon the grandparents to show such visitation is in the child's best interests." 18 Kan. App. 2d 112, Syl. ¶ 2.

Danielle testified that S.D.S. should have a relationship with the Paillets; however, the record on appeal does not reflect that the Paillets had a substantial relationship with S.D.S. The record on

appeal reflects that at the time of the hearing, S.D.S. was approximately 22 months old. Before Joshua died, Danielle's mother told him that "if he showed up on the place she would call the police on him." Before he died, Joshua was negotiating with Danielle for visitation with S.D.S.

The evidence at the hearing showed that there was a strained relationship between Danielle and the Paillets. Danielle repeatedly stated during the hearing that a relationship between S.D.S. and the Paillets should be fostered and encouraged. Notwithstanding this testimony, Danielle admitted that she had previously authorized her attorney to tell the Paillets she would not let them visit S.D.S. at any time.

The testimony of the surviving parent, Danielle, shows that she prevented the grandparents, who are parents of the child's deceased parent, from having any relationship with their grandchild. Danielle made it impossible for the grandparents to meet the statutory requirement of an existing substantial relationship. Although this is not a contract case, the facts make it analogous to a contract where one party has made it impossible for the other to perform. See *Talbott v. Nibert*, 167 Kan. 138, 146, 206 P.2d 131 (1949). Where Danielle has prevented the grandparents from even seeing their grandchild, there is no way they could have formed the substantial relationship required by statute. Under these circumstances, Danielle is coming to this court with unclean hands and should not be allowed to hide behind the wording of the statute. See *Perrenoud v. Perrenoud*, 206 Kan. 559, 577-78, 480 P.2d 749 (1971).

A case from Iowa with similar facts, *In re Hough*, 590 N.W. 2d 556, 559 (Iowa App. 1999), held:

"We hold where the grandparents of a child seek visitation with their grandchild and the parent continually and unreasonably denies visitation . . . a grandparent cannot be denied visitation for failure to have established a substantial relationship . . . . Under such circumstances, a parent preventing grandparents from having meaningful contact with the child is estopped from claiming the grandparents do not have any rights because of no substantial relationship."

We hold that where a parent is deceased and the other parent denies their child visitation with the parent or parents of the de-

ceased parent, absent some compelling reason to the contrary, the statutory requirement of an existing substantial relationship between the grandparent and the child shall not be required before granting visitation rights to the grandparent.

Affirmed.

PADDOCK, J., dissenting: I respectfully dissent.

The majority found that the trial court, without benefit of substantial evidence, presumed that the requirements of K.S.A. 38-129 were satisfied. The majority recognized that the trial court's findings based on a mere presumption would require reversal according to this court's decision in *Santaniello v. Santaniello*, 18 Kan. App. 2d 112, 850 P.2d 269 (1992).

Notwithstanding, the majority has affirmed the trial court by means of creating an exception to the requirements of K.S.A. 38-129 and specifically the "substantial relationship" requirement.

I disagree with this approach for several reasons. First, unless there is a constitutional defect in the statute, which is not claimed here, the drafting of statutory exceptions should be left to legislative wisdom and not that of this court. Second, the trial court did not find that the mother denied the grandparents visitation without compelling reasons. However, the majority, by formulating the exception, is reaching that conclusion. Finally, and more importantly, affirming the trial court would permit grandparent visitation without there being substantial evidence that visitation is in the child's best interests. In fact, there was evidence to the contrary. The mother testified that the grandfather physically abused his son by beating him with the butt of a gun. The mother also testified that because the child was very shy she might not take well to her grandparents, who are essentially strangers to her.

In formulating an exception to the statute, the majority is encouraged by the decision in *In re Hough*, 590 N.W.2d 556 (Iowa App. 1999), which is cited as having similar facts to the instant case. However, *Hough* is dissimilar on the facts in several particulars. First, Iowa Code § 598.35(7) (1997) establishes a grandparent's right to seek visitation where "[a] parent of the child unreasonably refuses to allow visitation by the grandparent or

unreasonably restrict[s] visitation." Additionally, the Iowa trial court found that the grandparents had been unreasonably denied visitation because nothing in the record indicated the child would be harmed by contact with the grandparents. Finally, the Iowa court's finding that the grandparents had established a substantial relationship with the child was supported to some extent by the fact that the child and his mother had lived with the grandparents for 3 weeks after the child's birth.

I would follow *Santaniello* and reverse the trial court.