<u>PUBLISHED</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 13-2348**

───────────

LEE GRAHAM SHOPPING CENTER, LLC,

Plaintiff – Appellee,

and

LEE GRAHAM SHOPPING CENTER LIMITED PARTNERSHIP; PAUL V. ZEHFUSS; SITTA M. ZEHFUSS; NICOLE M. ZEHFUSS; PAUL H. ZEHFUSS; T. EUGENE SMITH,

Third Party Defendants – Appellees,

v.

ESTATE OF DIANE Z. KIRSCH; DIANE Z. KIRSCH FAMILY TRUST; SEPARATE TRUST FOR THE BENEFIT OF WAYNE CULLEN,

Defendants – Appellants.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:13-cv-189-LO-TCB)

───────────

Argued: December 9, 2014          Decided: February 2, 2015

───────────

Before WILKINSON, SHEDD, and THACKER, Circuit Judges.

───────────

Affirmed by published opinion. Judge Shedd wrote the opinion in which Judge Wilkinson and Judge Thacker joined.

───────────

**ARGUED**: Roger Alexander Hayden, II, PASTERNAK & FIDIS, P.C., Bethesda, Maryland, for Appellants. Kerr Stewart Evans, Jr.,

EVANSSTARETT PLC, Fairfax, Virginia, for Appellees.  **ON BRIEF**: Nathan S. Brill, PASTERNAK & FIDIS, P.C., for Appellants.

SHEDD, Circuit Judge:

In May 2011, Diane Z. Kirsch assigned her limited partnership interest ("Interest") in the Lee Graham Shopping Center Limited Partnership ("Partnership"),[1] a business closely held by members of two families, to the Diane Z. Kirsch Family Trust ("Kirsch Trust"). By the terms of the Kirsch Trust, the Interest was to pass to another trust, established for the benefit of her long-term companion Wayne Cullen ("Cullen Trust"), upon Kirsch's death. Kirsch died in January 2012, and at that time, the Interest passed to the Cullen Trust as provided by the Kirsch Trust. In February 2013, the Partnership filed suit in the Eastern District of Virginia, seeking a declaratory judgment that the Partnership Agreement forbids the transfer of the Interest to the Cullen Trust. Cullen asserted a number of related counterclaims. The district court granted summary judgment to the Partnership on all claims, and Cullen now appeals. For the reasons that follow, we affirm.

I.

---

[1] Following the events underlying this dispute, the Lee Graham Shopping Center Limited Partnership was converted to an LLC. For ease of reference and to avoid confusion, we use the term "Partnership" to refer to this entity in both its past and present forms.

The Lee Graham Shopping Center partnership, in Falls Church, Virginia, was founded as a general partnership between Dr. Paul E. Zehfuss and T. Eugene Smith in 1969. In 1984, Zehfuss and Smith converted the general partnership to a limited partnership and adopted a partnership agreement ("Agreement") memorializing the change. Dr. Zehfuss then gifted interests of four percent in the Partnership to several family members, including his daughter, Diane Kirsch. He died in May 1985, leaving additional interests in the Partnership to Kirsch through his will.

By 2011, Kirsch had been diagnosed with terminal cancer and began the process of estate planning. In May 2011, she assigned her limited partnership Interest to the Kirsch Trust, which she retained the right to alter, amend, or revoke until her death. When she died on January 22, 2012, the Kirsch Trust held a 21 percent Interest in the Partnership, and it provided for the transfer of that Interest to the Cullen Trust upon her death. Acting in his capacity as trustee of the Kirsch Trust, Cullen transferred the Interest to the Cullen Trust. Kirsch's will was subsequently probated in Maryland in June 2012.

In February 2013, the Partnership filed suit in the Eastern District of Virginia, seeking a declaratory judgment that Kirsch's transfer of the Interest to the Kirsch Trust became void as of the date of her death, because the Agreement forbids

4

gift transfers to non-family members, and the Kirsch Trust provided for transfer of the Interest to a non-qualifying person – the Cullen Trust. The suit was filed in federal court on the basis of diversity jurisdiction, because Cullen is a resident of Maryland and the Partnership is a Virginia entity. Cullen asserted a number of defenses and related counterclaims. The parties filed cross-motions for summary judgment, and the district court granted summary judgment to the Partnership on all counts. Cullen appealed that decision to this court.

## II.

Cullen first argues that the district court lacked jurisdiction because this case falls within the probate exception to federal diversity jurisdiction.[2] Determining whether

---

[2] In addition to challenging the district court's rulings on jurisdiction and the construction of the Agreement, Cullen raises a number of other issues on appeal. These are: (1) the transfer restrictions in the Agreement are unlawful restraints on alienation in violation of Virginia law; (2) the general partners either waived their right to challenge the transfer of the Interest to Cullen or consented to that transfer by failing to contest it in a timely fashion; (3) a genuine dispute of material fact exists as to whether Paul V. Zehfuss, a general partner and Kirsch's brother, intentionally deceived Kirsch into believing that the Partnership would accept the transfer to Cullen as valid; (4) the district court erred in denying Cullen the opportunity to conduct discovery; (5) the Partnership's later conversion to an LLC was unlawful because Cullen did not vote on the conversion; (6) Cullen was wrongfully denied an accounting and the right to inspect the Partnership's books and records; (7) the Partnership has converted at least $37,800.00, (Continued)

subject matter jurisdiction exists is a question of law that we review de novo. In re Kirkland, 600 F.3d 310, 314 (4th Cir. 2010).

The Supreme Court has recently spoken to the scope of the probate exception in Marshall v. Marshall, 547 U.S. 293 (2006). In that case, the Court held that

> the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Id. at 311-12. Thus, after Marshall, the probate exception is limited to two categories of cases: (1) those that require the court to probate or annul a will or to administer a decedent's estate, and (2) those that require the court to dispose of property in the custody of a state probate court.

---

plus interest, in partnership distributions that rightfully belong to Cullen as the owner of the Interest; (8) Paul V. Zehfuss's misrepresentations regarding Kirsch's rights with respect to the Interest constitute negligence, fraud, and intentional interference with contract; (9) the district court lacked personal jurisdiction over Cullen; and (10) the district court should have ordered Paul V. Zehfuss joined as a necessary party to this lawsuit. We have independently reviewed the record and we find that each of these contentions has either been waived or has no merit.

The parameters of the probate exception cannot be read so broadly as to include this case. In Marshall, the Supreme Court clarified that the proper scope of the exception is "narrow." Id. at 305, 307. Thus, it applies only if a case actually requires a federal court to perform one of the acts specifically enumerated in Marshall: to probate a will, to annul a will, to administer a decedent's estate; or to dispose of property in the custody of a state probate court. A case does not fall under the probate exception if it merely impacts a state court's performance of one of these tasks. See, e.g., Three Keys Ltd. v. SR Util. Holding Co., 540 F.3d 220, 227 (3d Cir. 2008) ("Insofar as [prior cases] interpreted the probate exception as a jurisdictional bar to claims 'interfering' with the probate, but not seeking to probate a will, administer an estate, or assume in rem jurisdiction over property in the custody of the probate court, that interpretation was overbroad and has been superseded by Marshall.") (internal citation omitted).[3]

This case requires the court to interpret the terms of the Agreement and the Kirsch and Cullen Trusts, not the terms of Kirsch's will. The declaratory judgment requested in this case

---

[3] Other circuits have also recognized that Marshall sharply curtailed the scope of the probate exception. See Curtis v. Brunsting, 704 F.3d 406, 407 (5th Cir. 2013); Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 24 (1st Cir. 2010); Lefkowitz v. Bank of New York, 528 F.3d 102, 105 (2d Cir. 2007).

7

will not order a distribution of property out of the assets of Kirsch's estate, although it may affect future distributions. Further, the Interest at issue is currently held by the Cullen Trust, and thus is not property in the custody of the Maryland probate court. Accordingly, this case falls into neither of the narrow classes of cases defined in Marshall.[4] The probate exception therefore does not preclude federal court jurisdiction in this case, and it was properly before the district court under normal principles of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

III.

Having established that the district court properly exercised jurisdiction over this case, we turn now to review its decision on the merits. We review the district court's grant of summary judgment in favor of the partnership de novo. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). We view the evidence

---

[4] Indeed, Cullen's argument for the application of the probate exception in this case resembles the argument rejected in Marshall itself. There, the Supreme Court held that a claim of tortious interference with the expectancy of an inheritance did not fall within the probate exception. Marshall, 547 U.S. at 314. Like the tortious interference claim in Marshall, the contract interpretation question involved here may affect the outcome of the distribution of estate assets, but that question itself requires neither an interpretation of a will nor a distribution of estate assets.

and all reasonable inferences from it in the light most favorable to Cullen, the non-moving party. Id. The parties agree that the interpretation of the Agreement is governed by Virginia contract law. See Agreement Section 9.09 ("[A]ll questions with respect to the interpretation or construction of this Agreement and the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the Commonwealth of Virginia."); Donnelly v. Donatelli & Klein, Inc., 519 S.E.2d 133, 138 (Va. 1999) (Virginia partnership agreements are interpreted as contracts between the parties).

We must decide whether the Agreement permitted Kirsch to transfer her Interest to Cullen as a gift through the Kirsch Trust and the Cullen Trust. Cullen argues that the transfer is permissible because the introductory clause of Section 6.02 creates a default rule that all limited partnership interests are freely assignable. The Partnership, on the other hand, argues that the transfer is prohibited because Sections 6.02(a) and 6.02(e) provide the exclusive mechanisms by which an interest may be transferred. For the reasons below, we believe that the Partnership's reading of the Agreement is correct.

The central interpretive question in this case is whether the Agreement permits gift transfers to non-family members. Although far from a model of clarity, the Agreement permits only one reasonable interpretation on this point. Section 6.02,

9

titled "Assignment of Limited Partner's Interest," provides at the outset that "[t]he interest of each Limited Partner in the Partnership shall be assignable subject to the following terms and conditions." J.A. 34. That introductory clause is followed by Sections 6.02(a)-(e), which then set out those terms and conditions.

Section 6.02(a), titled "Limitations on Assignment," governs the circumstances under which a limited partner may sell his partnership interest to a person making a "bona fide written offer" to purchase it. J.A. 34-35. Before a limited partner may accept such an offer, he must offer to the Partnership itself the opportunity to repurchase his interest on the same terms as those contained in the offer. If the Partnership refuses, he must then offer the same opportunity to all current partners. In essence, 6.02(a) creates a right of first refusal for the Partnership and for current partners when there is an offer to purchase. Sections 6.02(b), (c) and (d) further elaborate on 6.02(a)'s purchase offer framework by describing, respectively, the circumstances under which an assignee of a limited partnership interest may become a limited partner, the effect of the assignment of a limited partnership interest, and the definition of the term "bona fide offer."

Section 6.02(e), titled "Family Transfers," then removes transfers to family recipients from the framework of 6.02(a).

10

Under 6.02(e), "[t]he sale or other transfer by a Partner, whether _inter_ _vivos_ or by will, of his Partnership interest ... shall not be subject to the restrictions or limitations of Section 6.02(a)" if the sale or transfer is made to a member of a certain group of family recipients, defined as the partner's "spouse, parent, descendant, or spouse of a descendant, or to a trust of which any of said persons are beneficiaries." J.A. 37.[5] Thus, 6.02(e) extends favorable treatment to family members in two ways: a purchase offer transfer to a family recipient of the type authorized in 6.02(a) is not subject to 6.02(a)'s right of first refusal provisions, and a non-purchase offer transfer to a family recipient is permitted.

The clear reading of Section 6.02 as a whole is that interests may only be assigned pursuant to the terms of either 6.02(a) or 6.02(e). Any broader right of assignability renders 6.02's introductory stipulation that interests are assignable "subject to the following terms and conditions" superfluous. See TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 557 S.E.2d 199, 200 (Va. 2002) ("[N]o word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words

---

[5] Although Cullen had been Kirsch's companion for many years prior to her death, she and Cullen had never married. Therefore Cullen is not a family recipient as defined in 6.02(e).

in the contract.") This statement is immediately followed by 6.02(a)'s purchase process and the limitations and explanations of that process in 6.02(b)-(d). 6.02(e) is the only Section in 6.02 that contemplates any transfer outside of the 6.02(a) process, and it does so by explicitly removing itself from the terms of 6.02(a). The resulting inference, therefore, is that a transfer may take place only under the purchase offer process outlined in 6.02(a) or as a family transfer pursuant to 6.02(e).

Cullen, however, argues that the operative clause of Section 6.02 is the introductory clause, which reads "[t]he interest of each Limited Partner in the Partnership shall be assignable" (emphasis added). The subsequent phrase "subject to the following terms and conditions," he argues, exists only to denote that in certain special cases involving offers to purchase, additional strictures apply. Finally, he argues that 6.02(e) governs only the special case of purchase offer transfers among family members because the only change it effects is to exempt those transfers from the 6.02(a) framework. In the absence of a purchase offer, he concludes, no restrictions are applicable and interests are freely assignable to anyone under the introductory clause of 6.02.

A close examination of Section 6.02(e) reveals that Cullen's reading is not correct. 6.02(e) covers both purchase offers and other types of transfers between family members. If

these other transfers were allowed under Cullen's reading of 6.02, there would be no need for 6.02(e) to exempt them from the provisions of 6.02(a). Such a reading would render these words in 6.02(e) superfluous, and thus we must reject it. See TM Delmarva Power, 557 S.E.2d at 200; Roanoke Marble & Granite Co. v. Standard Gas & Oil Supply Co., 154 S.E. 518, 520 (Va. 1930) (it is a "settled rule of construction ... that contracts must be construed so as to give effect to every part thereof").

This favored treatment of family is further evidenced by who benefits from the right of first refusal contained in 6.02(a). At the time the Agreement went into effect, all interests in the Partnership were held by its three partners: Smith and Dr. Zehfuss, the founders of the Partnership, and Paul V. Zehfuss, the founding partner's son. Section 6.02(a) protects this family ownership by providing that before an outsider can purchase a Partnership interest, a right of first refusal must be given first to the Partnership and then to existing partners. The effect of this provision is thus to enable the families who own the Partnership to retain ownership if they so desire. The only exception to this right of first refusal for family members appears in 6.02(e), where a family right of first refusal is not

needed because only family members are eligible to obtain partnership interests under 6.02(e).[6]

Finally, because we find that the Agreement unambiguously prohibits gift transfers of interests to non-family members, there is no need to remand for discovery on the meaning of the Agreement. See Pocahontas Mining Ltd. Liab. Co. v. CNX Gas Co., LLC, 666 S.E.2d 527, 531 (Va. 2008) ("When the writing, considered as a whole, is clear, unambiguous, and explicit, a court asked to interpret such a document should look no further than the four corners of the instrument."). As a result, we conclude that the Agreement prohibits the transfer of the Interest to the Cullen Trust, which benefits a non-family member.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[6] Not only does Cullen's reading ignore the favorable treatment the Agreement provides for family members, it in fact favors non-family members. Under his view, family members receiving gift transfers would, under 6.02(e), be explicitly required to obtain the written permission of the general partners to become full limited partners, while there would be no such explicit requirement for non-family members.

14