**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1467

SHARON D. LOVE, Administrator of the Estate of Yeardley R. Love, Deceased,

Party-in-Interest - Appellant,

v.

CHARTIS PROPERTY CASUALTY COMPANY,

Plaintiff-Appellee,

GEORGE W. HUGUELY, V,

Defendant,

ANDREW MURPHY, III; MARTA MURPHY,

Parties-in-Interest.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Senior District Judge. (8:13-cv-01479-DKC)

Argued: March 21, 2018                          Decided: May 15, 2018

Before DUNCAN and AGEE, Circuit Judges, and Leonie M. BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Paul David Bekman, BEKMAN, MARDER & ADKINS, LLC, Baltimore, Maryland, for Appellant.  Stacey Ann Moffet, ECCLESTON AND WOLF, P.C., Hanover, Maryland, for Appellee.  **ON BRIEF:** Emily C. Malarkey, BEKMAN, MARDER & ADKINS, LLC, Baltimore, Maryland, for Appellant.  Richard J. Berwanger, Jr., ECCLESTON AND WOLF, P.C., Hanover, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sharon D. Love, ("Sharon Love") the administrator of her daughter, Yeardley R. Love's estate, appeals the district court's order granting Chartis Property Casualty Company ("Chartis") summary judgment in a declaratory judgment action brought by Chartis to determine whether it is required to indemnify or defend its insured, George W. Huguely, V ("Huguely"), who is being sued by Sharon Love for the wrongful death of her daughter.[1] The district court found that under the exclusion for "any criminal act" in both the Chartis Homeowners Insurance and Excess Liability Insurance Policies, Chartis had no obligation either to indemnify or defend Huguely. We agree with the district court and will affirm.

I.

This litigation arises out of the tragic death of Yeardley Love ("Yeardley"), a University of Virginia senior who had been involved for several years in a volatile romantic relationship with fellow senior Huguely. On the evening of May 2, 2010, Huguely, who had been drinking heavily, went to Yeardley's apartment, broke into her bedroom, and physically assaulted her before leaving. When one of Yeardley's

---

[1] The Declaratory Judgment action was brought against Huguely and three interested parties – Huguely's mother and stepfather, Marta Murphy and Andrew Murphy, III, who purchased the insurance policies at issue under which Huguely is considered an insured, and Sharon Love. J.A. 12. The action was filed in the District Court of Maryland where the policies were delivered. The parties did not dispute either venue or that Maryland law applies. J.A. 902. Only Sharon Love has appealed.

roommates returned to their room early the next morning, she found Yeardley unconscious. Medical emergency personnel determined that Yeardley was dead.

After a jury trial in the Circuit Court for the City of Charlottesville, Huguely was found guilty of second degree murder in violation of Virginia Code § 18.2-32, and was sentenced to 23 years' imprisonment. J.A. 913. His conviction was upheld on appeal and his petition for a writ of certiorari was denied by the United States Supreme Court. *Huguely v. Virginia*, 136 S. Ct. 119 (2015) (mem). J.A. 895. He has filed a petition for a writ of habeas corpus in the Virginia court where he was convicted. That petition is pending. *Id.*

While Huguely appealed his conviction, Sharon Love filed a multi-count wrongful death action in the Circuit Court for the City of Charlottesville which, in its amended version, alleges four counts all sounding in negligence. Specifically, the complaint alleges Failure to use Ordinary Care (Count 1); Indifference and Acting with Utter Disregard of Caution (Count 2); Willful and Wanton Negligence (Count 3); and Assault and Battery (Count 4). All factual allegations supporting these counts refer to Huguely's forcible entry into Yeardley's bedroom, his efforts to get her to talk to him, and his physical interactions with her including that "he grabbed Love; held Love's arms and shoulders; shook Love; grabbed Love 'a little bit' around her neck; wrestled with Love on the floor of Love's bedroom, at which time Love's nose started bleeding; and then

4

tossed and/or pushed Love onto her bed, with Love's nose still bleeding; and engaged in other acts of physical force to Love." J.A. 117.[2]

Under a reservation of rights clause in the insurance policies, Chartis initially provided a defense for Huguely. After investigation, Chartis determined that a coverage exclusion in both policies entitled it to deny providing Huguely with either indemnification or a defense. Accordingly, Chartis filed a declaratory judgment action for a determination that it had no obligation either to indemnify or defend Huguely.

Part III (A and C) of the Chartis Homeowners Insurance Policy provides coverage for "damages an insured person is legally obligated to pay for personal injury . . . caused by an occurrence covered by [the] policy" and "will pay the costs to defend an insured . . . even if the suit is false, fraudulent or groundless." J.A. 144. Part E, the exclusions portion of the policy, provides that the "policy does not provide coverage for liability, defense costs or any other cost or expense for:" and then under 19 numbered short headings such as "2. Aircraft" and "3. Watercraft," it provides a narrative description of the specific exclusion. J.A. 145. Exclusion 17, titled "Intentional Acts," describes the exclusion as being for "[p]ersonal injury . . . resulting from any criminal, willful, intentional or malicious act or omission." J.A. 146.

Part V of the Excess Liability Insurance Policy similarly includes an exclusion section: "This insurance does not provide coverage for liability, defense costs or any

_____

[2] The wrongful death action has been stayed while the insurance coverage issues are being litigated. J.A. 896.

5

other cost or expense" which is followed by 19 exclusions, each having a heading similar to those headings in the Homeowners Insurance Policy. J.A. 253. Exclusion 8, titled "Intentional Act," provides no coverage "[a]rising out of any criminal, willful, fraudulent, dishonest, intentional or malicious act." J.A. 254.[3]

## II.

In its summary judgment motion Chartis argued that because all the factual allegations in the wrongful death action involve conduct that was adjudicated as criminal, it had no obligation to either indemnify or defend Huguely. Sharon Love's primary argument, which ignored the "any" modifier in the exclusions, was that the exclusions for a "criminal act" must be limited to intentional criminal acts because the exclusion in each insurance policy appeared under the "Intentional Acts" or "Intentional Act" heading. She then argued that despite Huguely's conviction for second degree murder, whether Huguely could have intended to harm Yeardley was a highly contested fact given evidence of his extreme intoxication, and that summary judgment under these circumstances was inappropriate. She also relied on a statement in *Young v. Brown*, 658 So.2d 750, 754 (La. Ct. App. 1995) that "[t]he term 'criminal acts,' as used in the coverage exclusion is susceptible of more than one meaning" and that an exclusion for

---

[3] The district court observed that no party had argued that the slight difference in the wording of "resulting from" in the Homeowners Insurance Policy and "arising out of" in the Excess Liability Policy were material, therefore the two exclusions were considered together. J.A. 900.

"the intentional or criminal acts of an insured person" required the criminal act to be intentional. J.A. 706.

That argument was rejected by the district court on two grounds. First, the district court concluded that treating the heading of the exclusion provisions as part of the exclusion created ambiguity, by barring coverage for an "Intentional Act [a]rising out of any . . . intentional . . . act." J.A. 907. Instead, the district court found that the proper reading of the exclusions required reading the prefatory language before the list of exclusions and omitting the title. J.A. 908. In this way the proper reading of the exclusion would be: "This policy does not provide coverage for liability, defense costs or any other cost or expense for: personal injury . . . resulting from any criminal, willful, intentional or malicious act . . . ."

The district court also rejected the Louisiana authority upon which Sharon Love relied, pointing out that Maryland and other authorities had explicitly rejected *Young*'s approach, instead holding that "clauses that cover both intentional and criminal acts like the ones here do not require intent for criminal acts." J.A. 908. Concluding that Huguely's conviction for second degree murder was a criminal act, the district court concluded that the policies' exclusions for "any criminal act" applied and that Chartis had no duty to indemnify Huguely. J.A. 920.

Recognizing that the duty to defend involves a somewhat different analysis, and is a broader duty than the duty to indemnify, the district court considered whether there was any potential for the tort claims in the wrongful death lawsuit to fall within the policy's coverage. J.A. 921. Sharon Love argued that if Huguely's conviction were overturned

7

and he were retried and acquitted, the criminal act exclusion would not apply.  Even though the potential for civil liability was slight, she argued that Chartis had a duty to defend.  J.A. 924.

The district court rejected that position, finding that the appropriate standard is "reasonable potential" for liability, and rejected Love's argument that the pending habeas corpus action was sufficient to establish a reasonable potential for liability.  "There is no reason to think that Maryland would hold that the same negligible and nearly unending potential for habeas relief warrants an ongoing duty to defend, especially where, as here, Respondents have not argued Defendant's actual innocence." J.A. 925.

III.

We review an appeal from an order granting summary judgment *de novo*, viewing the facts in a light most favorable to the non-moving party.  *See Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 681 (4th Cir. 2015).

After having the benefit of oral argument and carefully reviewing the very thorough opinion of the district court, we agree with the district court that the unambiguous language in the exclusions in the Chartis Homeowners Liability Policy for personal injuries "resulting from any criminal" act and in the Excess Liability Policy for injuries "arising out of any criminal" act entitles Chartis to summary judgment and a declaration that it is not required either to indemnify Huguely or provide him with a defense in the wrongful death action brought by Sharon Love.

8

IV.

Therefore, for the reasons stated by the district court, *see Chartis Property Casualty Co. v. George W. Huguely, V, et al.*, 243 F. Supp. 3d 615 (D. Md. 2017), the judgment of the district court is

*AFFIRMED*.