**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 23, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALEXANDER W. DUNLAP,

     Plaintiff - Appellant,

v.

KARIN NIELSEN, individually; ESTATE
OF TYGHE NIELSEN; NIELSEN
CAPITAL FINANCE, a Kansas limited
liability company,

     Defendants - Appellees.

No. 18-3092
(D.C. No. 2:16-CV-02400-JAR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

Plaintiff-Appellant Andrew W. Dunlap brought this diversity action against the

Estate of Tyghe Nielsen (Estate) and others, asserting claims related to loans he made

to Nielsen Capital Finance (NCF). Dr. Dunlap now appeals the district court's

judgment in favor of the Estate on his breach of contract claim against it. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# BACKGROUND

Dr. Dunlap and Dr. Tyghe Nielsen were friends and former colleagues at a hospital in Arkansas. In 2009, Dr. Nielsen was diagnosed with cancer, and shortly thereafter he and his family moved to Kansas. He formed NCF in 2013, after he was unable to continue working as a physician. Dr. Nielsen was NCF's sole member.

Dr. Dunlap loaned $150,000 to NCF in October 2014, and loaned it an additional $50,000 the following month. Both loans were memorialized with documents signed by Dr. Nielsen and, purportedly, by his wife, Karin Nielsen.

Dr. Nielsen died in December 2015. On May 24, 2016, Dustin Wiemers, one of Dr. Nielsen's creditors, filed a Petition for Appointment of Special Administrator for the Estate of Tyghe Nielsen in the District Court of Miami County, Kansas, Probate Division [hereinafter "Probate Case"].[1] On the same day, the state court appointed a Special Administrator for the Estate.

Mr. Wiemers published a "Notice to Creditors" regarding the May 24, 2016, Petition once a week for three weeks in the Kansas City Star beginning on June 2, 2016, and in the Miami County Republic beginning on June 8, 2016 [hereinafter "Notices"]. Aplt. App. Vol. II at 300-01. Both Notices stated:

> You are hereby notified that on May 24, 2016, a Petition for Issuance of Letters of Administration was filed in this Court by Dustin Wiemers, one of the plaintiffs in a civil case against Tyghe Nielsen, deceased, who has a claim against Tyghe Nielsen and, therefore, has an interest in

---

[1] As a result of the unification of the Kansas court system, there are no longer "probate courts" per se in the state and all probate matters are handled in Kansas district court. *See Gorham State Bank v. Sellens*, 772 P.2d 793, 798 (Kan. 1989).

2

the estate as a creditor, praying for issuance of Letters of Administration to Karla Kerschen Shepard as Special Administrator.

> *All creditors of the decedent are notified to exhibit their demands against the Estate within the later of four months from the date of first publication of notice under K.S.A. 59-2236 and amendments thereto, or if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given as provided by law, and if their demands are not thus exhibited, they shall be forever barred.*

*Id.* at 300-01, 511 (emphasis added).

Shortly after Mr. Wiemers filed the May 24 Petition, Ms. Nielsen recorded Dr. Nielsen's will [hereinafter "Will"] in the Probate Case. The state district court admitted the Will and substituted Ms. Nielsen as the Estate's Executor on July 14, 2016.

In June 2016, shortly after the Notices were first published, Dr. Dunlap, a resident of Arkansas, filed this action in the U.S. District Court for the Eastern District of Arkansas, asserting breach of contract and promissory estoppel claims against Ms. Nielsen, the Estate and NCF (collectively "Defendants") for the amounts due on his loans to NCF. The Arkansas federal court immediately transferred this action to the U.S. District Court for the District of Kansas, in part based on Dr. Dunlap's allegations that the Estate was in probate in Kansas state court.

In July 2017, Defendants moved for summary judgment on Dr. Dunlap's promissory estoppel claims and his breach of contract claims against Ms. Nielsen and the Estate. As relevant to this appeal, Defendants argued Dr. Dunlap's breach of contract claim against the Estate was barred because he had failed to make a timely claim in the Probate Case as required by Kansas' nonclaim statute, Kan. Stat. Ann.

3

§ 59-2239(1).[2]  The district court rejected this argument and denied summary judgment on the breach of contract claims against the Estate and Ms. Nielsen, but granted summary judgment against Dr. Dunlap's promissory estoppel claims.

Following a bench trial on the breach of contract claims, the district court issued findings of facts and conclusions of law in which it concluded Ms. Nielsen had not been a party to any contract with Dr. Dunlap and that Dr. Dunlap's claim against the Estate was in fact barred as a result of his failure to timely present it in the Probate Case.  After the court entered judgment in favor of the Defendants, Dr. Dunlap timely filed this appeal.

## DISCUSSION

Dr. Dunlap challenges the district court's final decision regarding his breach of contract claim against the Estate on two grounds.  First, he asserts for the first time that the district court lacked jurisdiction to decide whether his claim was barred by Kansas' nonclaim statute because this question falls within the probate exception to diversity jurisdiction.  And in the event the court had jurisdiction to decide this issue,

---

[2]  As discussed in more detail below, this statute provides as relevant here that "all demands" against a decedent's estate

> shall be forever barred from payment unless the demand is presented within the later of: (a) four months from the date of first publication of notice under K.S.A. 59-2236, and amendments thereto; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control.

Kan. Stat. Ann. § 59-2239(1).

Dr. Dunlap argues the district court erred in concluding he received actual notice of the applicable limitations period as required for his claim to be barred under the statute. For the reasons stated below, we conclude the district court had jurisdiction to decide whether Kan. Stat. Ann. § 59-2239 barred his claim against the Estate and that it properly determined the statute barred his claim.

## A. Subject Matter Jurisdiction and the Probate Exception

The probate exception is a judicially created exception to diversity jurisdiction that "stem[s] in large measure from misty understandings of English legal history." *Marshall v. Marshall*, 547 U.S. 293, 299 (2006). Its essence is that "a federal court has no jurisdiction to probate a will or administer an estate" or "to disturb or affect the possession of property in the custody of a state court." *Markham v. Allen*, 326 U.S. 490, 494 (1946); *see Marshall*, 547 U.S. at 311-12. Thus, the Supreme Court declared in *Markham*, "federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Markham*, 326 U.S. at 494 (internal quotation marks omitted).

In the years following *Markham*, federal courts "puzzled over the meaning of the words 'interfere with the probate proceedings,'" and some, including this court, "read those words to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedent's estate." *Marshall*, 547 U.S. at 311

5

(quoting *Markham*, 326 U.S. at 494, and citing *Rienhardt v. Kelly*, 164 F.3d 1296, 1300-01 (10th Cir. 1999), as an example of an overbroad reading of the exception). The Supreme Court rejected this approach in *Marshall v. Marshall*, clarifying that the scope of the probate exception is "narrow" and "distinctly limited." *Id.* at 305, 310. The Court explained the exception "reserves to state probate courts [1] the probate or annulment of a will and [2] the administration of a decedent's estate; it also precludes federal courts from [3] endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 311-12. Thus, where diversity jurisdiction exists, federal courts retain jurisdiction to decide matters that are probate-related or that may impact the state probate court's performance of the three tasks reserved to it, so long as the federal court itself does not engage in these tasks. *See, e.g.*, *id.* at 299-300 (holding claim did not fall within probate exception even though it raised "questions which would ordinarily be decided by a probate court in determining the validity of the decedent's estate planning instrument" (internal quotation marks omitted)); *Markham*, 326 U.S. at 494 (declaring federal courts have jurisdiction to adjudicate rights in property, even though the state probate court may be bound by the federal court's judgment); *Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678, 681 & n.4 (4th Cir. 2015) (holding federal court had jurisdiction to decide contract interpretation issue though it could affect the state court's distribution of estate assets); *Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007) ("[W]here exercise of federal

6

jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction.").

Against this legal backdrop, Dr. Dunlap recognizes that the district court had jurisdiction to decide his breach of contract claim against the Estate, notwithstanding the probate exception and the fact that its decision would likely be binding in the Probate Case. But, inconsistently, he claims the probate exception deprived the district court of jurisdiction to rule on Defendants' affirmative defense that this claim was barred by Kansas' nonclaim statute, because the district court's ruling "directly interferes with the Probate Court's control of [E]state assets." Aplt. Opening Br. at 14. As just described, this is not the test for assessing whether the probate exception applies. The district court's judgment that Dr. Dunlap failed to present his demand in the Probate Case, while it may affect the distribution of Estate assets, does not constitute the disposal of Estate assets in the custody of the Kansas state court. As a result, the probate exception does not apply on this basis. *See Marshall*, 547 U.S. at 312 (concluding probate exception does not apply where party is not "seek[ing] to reach a *res* in the custody of the state court"); *Lee Graham*, 777 F.3d at 681 & n.4 (holding that resolving a question that may affect the distribution of estate assets does not constitute a distribution of estate assets subject to the probate exception).

Dr. Dunlap also asserts that the district court's ruling that his claims are time-barred constitutes administration of the Estate, because, he argues, notification

of creditors and management of their claims is part of estate administration. But even if the latter assertion is true, the district court did not perform either of these estate administration functions. It simply determined that Dr. Dunlap's claims were barred for failure to timely present them in the Probate Case. That this determination may affect future Estate administration does not bring it within the probate exception. *See, e.g.*, *Lee Graham*, 777 F.3d at 681 (after *Marshall*, a matter "does not fall under the probate exception if it merely impacts a state court's performance of one of [the] tasks" *Marshall* reserved to the probate court).

Dr. Dunlap also asserts the probate exception applies here because the nonclaim statute is located in Kansas' probate code, but this is precisely the kind of over-broad reading of the exception that the Supreme Court rejected in *Marshall*. And even assuming Kansas law grants its state courts exclusive jurisdiction to adjudicate the state's nonclaim statute, as Dr. Dunlap suggests with scant support, this would not limit otherwise existing federal jurisdiction. *See Marshall*, 547 U.S. at 314 ("[T]he jurisdiction of the federal courts, having existed from the beginning of the Federal government, cannot be impaired by subsequent state legislation creating courts of probate." (internal quotation marks and brackets omitted)). Accordingly, the probate exception does not apply here and the district court had jurisdiction to decide whether Kansas' nonclaim statute barred Dr. Dunlap's claim against the Estate.

## B. The District Court's Decision

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Keys Youth Servs., Inc. v. City of Olathe*, 248 F.3d 1267, 1274 (10th Cir. 2001). A factual finding is clearly erroneous "only if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted). Because this is a diversity case governed by Kansas law, "we ascertain and apply [Kansas] law such that we reach the result that would be reached by [a Kansas] court." *Martinez v. Angel Expl., LLC*, 798 F.3d 968, 973 (10th Cir. 2015) (internal quotation marks and brackets omitted).

As noted earlier, Defendants argued on summary judgment that Dr. Dunlap's breach of contract claim against the Estate was barred because he failed to exhibit a timely claim in the Probate Case as required by Kan. Stat. Ann. § 59-2239. It provides as relevant here:

> All demands . . . against a decedent's estate . . . shall be forever barred from payment unless the demand is presented within *the later of*: (a) four months from the date of first publication of notice under K.S.A. 59-2236, and amendments thereto; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control.

Kan. Stat. Ann. § 59-2239(1) (emphasis added). This "special statute of limitations governing . . . claims against a decedent's estate . . . operates as a complete bar to all demands against a decedent's estate that are not timely filed," *Nelson v. Nelson*, 205 P.3d 715, 730 (Kan. 2009), including breach of contract claims, *see id.* at 731.

9

Under Kansas law, the demand must be timely made in the Kansas state district court overseeing the decedent's estate. *See In re Estate of Reynolds*, 970 P.2d 537, 543 (Kan. 1998); Kan. Stat. Ann. § 59-2237(a).

It is undisputed that Dr. Dunlap was a known creditor of Dr. Nielsen and that the Will did not extend the statute of limitations for paying Dr. Nielsen's debts. Accordingly, to preserve a claim against the Estate under § 59-2239(1), Dr. Dunlap was required to present his claim in the Probate Case within four months of the published notice to creditors or within 30 days of receiving actual notice of the statute's limitation periods, whichever was later. *See id.* Dr. Dunlap did not make a demand against the Estate in the Probate Case until October 10, 2017, after summary judgment briefing was concluded.

Defendants argued on summary judgment that the four-month period for asserting a claim against the Estate began to run when the Notices were published in June 2016 and that Dr. Dunlap had received actual notice of the applicable limitations period: when Mr. Wiemers first published the Notices; when Defendants asserted Kan. Stat. Ann. § 59-2239 as an affirmative defense in their answers; and/or when they served Dr. Dunlap with hard copies of the Notices as part of their Rule 26(a)(1) disclosures. In its summary judgment decision, the district court agreed with Defendants that publication of notice as referenced in § 59-2239(1)(a) occurred in June 2016, when Mr. Wiemers published the Notices, and that the four-month period for presenting a claim following publication of the Notices had therefore expired. But it held Dr. Dunlap's claims against the Estate nonetheless

10

were not barred because the actions cited by Defendants had not provided Dr. Dunlap with actual notice of the statutory limitation period, and thus the alternate 30-day period for timely bringing a claim provided in § 59-2239(1)(b) had not yet begun to run.

The district court based this conclusion on Kansas authority holding that a known creditor "must receive notice that is reasonably calculated under the circumstances to apprise an interested party of the pendency of the action and afford the party an opportunity to present its claim." *Reynolds*, 970 P.2d at 545. The district court concluded that the first two events cited by Defendants had not included the information necessary to provide such notice. And while Defendants' production of the Notices as part of its Rule 26(a) disclosures provided this information, the district court concluded this event "was not reasonably calculated to apprise [Dr. Dunlap] of his rights in the Probate Case" because the Notices were "buried within a volume of discovery." Aplt. App. Vol. II at 518.

At the conclusion of the bench trial that followed, Defendants asked the district court to take judicial notice of an additional event, Dr. Dunlap's response to their motion for summary judgment, filed August 28, 2017. In this filing, Defendants argued, Dr. Dunlap had demonstrated that he had actual notice of the limitations period established by Kan. Stat. Ann. § 59-2239 for claims against the Estate. The district court took judicial notice as requested and concluded Dr. Dunlap's references to the published Notices in his summary judgment response indeed established that he had received actual notice of them and of § 59-2239's claim presentation

11

requirements no later than the response's August 28, 2017 filing date. And because Dr. Dunlap had not presented his claim in the Probate Case within 30 days of this date, the District Court concluded his claims against the Estate were time-barred under § 59-2239(1).

Dr. Dunlap challenges the district court's finding that he received actual notice no later than August 28, 2017. He first argues Defendants' summary judgment motion did not provide actual notice of his rights in the Probate Case because Defendants did not intend to provide him with the required notice through this vehicle. But Dr. Dunlap cites no evidence regarding Defendants' intent or lack of intent to provide notice through the summary judgment process or, more importantly, any authority that a lack of such intent would negate his receipt of actual notice through this process. Nor does he cite authority supporting his implication that Kansas law limits the means by which actual notice can be provided and that such notice cannot be provided through court filings. *See* Kan. Stat. Ann. § 59-2236(b) ("Actual notice . . . may include, but not be limited to, mailing a copy of the published notice, by first class mail, to creditors"); *In re Estate of Pennington*, 829 P.2d 618, 622 (Kan. Ct. App. 1992) (noting oral notice may satisfy actual notice requirement) (cited with approval in *Reynolds*, 970 P.2d at 544-45).[3] Further, the

---

[3] Dr. Dunlap's reliance on the due process requirements first stated in *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478 (1988), is also misplaced, as this decision does not specify the means by which a known creditor must receive actual notice. *See id.* at 491 (holding "the Due Process Clause requires that [a known creditor] be given notice by mail or other means as certain to ensure actual notice" (internal quotation marks and brackets omitted)).

Kansas Supreme Court has indicated that a known creditor's actual knowledge of the statutory limitation period, even where formal actual notice was not given, can bar his claim if it is not timely filed. *See Reynolds*, 970 P.2d at 545 ("Failure to give a known creditor notice of the statute of limitations, *in the absence of the creditor having actual knowledge of the statutory period under the nonclaim statute*, will not bar the claim until actual notice is given to the known or reasonably ascertainable creditor." (emphasis added)).

Dr. Dunlap also suggests that even if actual notice could theoretically be provided through a court filing, Defendants' summary judgment filing was not reasonably calculated to notify him of the relevant limitation periods because it merely included the Notices as exhibits to Defendants' motion and statement of uncontroverted facts. This argument ignores that the limitation periods established by Kan. Stat. Ann. § 59-2239(1) were front and center in Defendants' summary judgment briefing. In fact, Defendants quoted both the statute and the Notices in their argument and/or their statements of uncontroverted material facts, in addition to providing copies of the Notices as exhibits to these materials. Defendants' summary judgment motion and related argument and exhibits thereby clearly informed Dr. Dunlap of the statutory limitation periods for claims against the Estate. Further, Dr. Dunlap's August 28 response brief demonstrates he received actual notice of these limitation periods and when the Notices were published, as he discussed both in arguing that neither publication nor actual notice had been provided as required to start the clock on § 59-2239's limitation periods. Under these circumstances, the

13

district court's finding that Dr. Dunlap had actual notice of these limitation periods no later than August 28, 2017 is amply supported by the record.

Finally, Dr. Dunlap at times appears to argue that actual notice to a known creditor is only effective under § 59-2239 if it is given during the four-month period following publication of the notices of this information. He cites no case law in support of this contention and instead bases it on Kan. Stat. Ann. § 59-709(b), which requires that the personal representative of an estate "give actual notice to known or reasonably ascertainable creditors prior to the expiration of the nonclaim statute." But as noted above, the nonclaim statute, § 59-2239, includes two limitations periods, the second of which does not expire until 30 days after actual notice is given. *See id.* § 59-2239(1)(a) & (b); *In re Estate of Powell*, No. 113,839, 2016 WL 1719842, at *2 (Kan. Ct. App. Apr. 29, 2016) (unpublished) (explaining that under § 59-2239(1) "the 4-month time limit is the default for all claims, but a special, second time period applies to known or reasonably ascertainable creditors who receive no notice of that period and must instead rely on actual notice"). Further, if this theory was correct, the period for a known creditor to present a claim against an estate could extend forever if actual notice was not given during the initial four-month limitation period, because any notice given thereafter would be ineffective and not start the clock on the 30-day post-notice limitation period. This result is contrary to the nonclaim statute's purpose, which is to protect against stale claims and enable the speedy and final settlement of estates, *see Nelson*, 205 P.3d at 730-31, and the Kansas Supreme Court's recognition that a known creditor's claim

14

can be barred once actual notice is given, *see Reynolds*, 970 P.2d at 545 ("Failure to give a known creditor notice of the statute of limitations . . . will not bar the claim *until actual notice is given* to the known or reasonably ascertainable creditor." (emphasis added)).  As a result, we conclude that actual notice sufficient to start the 30-day limitations period in § 59-2239(1)(b) can be given after expiration of the initial four-month limitation period provided by § 59-2239(1)(a).

In sum, we find no error in the district court's finding that Dr. Dunlap had actual notice of the statutory deadlines for presenting claims against the Estate no later than August 28, 2017.  Because it is undisputed that Dr. Dunlap did not present his claims in the Probate Case within 30 days of this date, his claims against the Estate are time-barred.

## CONCLUSION

For the reasons stated above, the district court's judgment is AFFIRMED.

Entered for the Court


Jerome A. Holmes
Circuit Judge

15