**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2406

MADISON MECHANICAL, INC.; MADISON MECHANICAL OS CORP.; MADISON MECHANICAL CONTRACTING, LLC; GLENN A. HASLAM; GARY J. GAROFALO; RICHARD ARNOLD; LAWRENCE P. KRAEMER; RICHARD M. LOMBARDO,

Plaintiffs - Appellants,

v.

TWIN CITY FIRE INSURANCE CO.,

Defendant – Appellee,

and

ROBERT BUCZKOWSKI,

Defendant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:17-cv-01357-SAG)

Argued: September 14, 2022                    Decided: November 29, 2022

Before RICHARDSON and HEYTENS, Circuit Judges, and MOTZ, Senior Circuit Judge.

Affirmed by unpublished opinion. Judge Heytens wrote the opinion, in which Judge Richardson and Senior Judge Motz joined.

**ARGUED:** Danielle Marie Vranian, Gary R. Jones, BAXTER, BAKER, SIDLE, CONN & JONES, P.A., Baltimore, Maryland, for Appellants. Charles Collins Lemley, WILEY REIN, LLP, Washington, D.C., for Appellee. **ON BRIEF:** Caroline E. Payton, BAXTER, BAKER, SIDLE, CONN & JONES, P.A., Baltimore, Maryland, for Appellants. Anna J. Schaffner, WILEY REIN LLP, Washington, D.C., for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

2

TOBY HEYTENS, Circuit Judge:

This case is about whether an insurance policy covers a particular claim. The policy covers claims for "Employment Practices Wrongful Act[s]," defined to include "wrongful dismissal, discharge, or termination of employment . . . or wrongful deprivation of career opportunity." JA 229. Because we agree the claims asserted here were not employment practices wrongful act claims, we affirm the district court's order granting summary judgment for the insurance company.

I.

In 2015, defendant Twin City Fire Insurance Company issued a policy to Madison Mechanical OS Corp. (holding company) and Madison Mechanical, Inc. (operating company). The holding company had five shareholders, including Robert Buczkowski, who also served as chief financial officer for the operating company.[1] The issue here is whether the 2015 policy required Twin City to defend and indemnify the holding company (as well as five other individuals and a third entity) against a state court lawsuit brought by Buczkowski.[2]

---

[1] Although plaintiffs' brief asserts Buczkowski was also an employee of the holding company, the cited pages of the record do not support that claim. Indeed, in his deposition, Buczkowski testified his "position as an officer of one of [the two] entities" was with "Madison Mechanical, Inc."—the operating company. JA 932; see also JA 1007 (email sent by Buczkowski identifying him as the chief financial officer of the operating company without mentioning the holding company).

[2] Plaintiffs originally asserted coverage under a 2016 policy as well. The district court concluded, however, that Twin City had no duty to defend or indemnify under that policy, and plaintiffs do not challenge that ruling before us.

3

A.

During the summer of 2015—a few months after the policy issued—the holding company's majority shareholder and sole director told Buczkowski that the other four shareholders were creating a new entity without him. Along with another investor, the non-Buczkowski shareholders created Madison Contracting, LLC (new company) in August 2015. Buczkowski first learned about the new company's existence that fall.

In November 2015, a lawyer sent a letter to the holding company's four other shareholders and the fifth investor in the new company. The letter said the lawyer represented Buczkowski "with respect to his interests in Madison Mechanical OS Corp."— the holding company. JA 292. The letter asserted that "the purpose of" the new company was "to divert the business and client base of [the holding company] for the benefit of [the new company]." JA 293. Such "diversion of corporate opportunity and contracts," the letter warned, "could lead to a cause of action for breach of fiduciary duty, interference with a contractual relationship, interference with an economic relationship, civil conspiracy and other potential causes of action." *Id.* The letter instructed the recipients to "cease and desist any . . . action to divert any corporate opportunity that [the holding company] has to either yourselves or [the new company]." *Id.* The letter did not mention Buczkowski's employment or demand any action involving the operating company.

Soon after that letter, Buczkowski was fired from his job. The termination was characterized as "for cause," JA 47, which the remaining shareholders claimed triggered a provision in the holding company's stockholder agreement requiring Buczkowski to sell back his shares for "the lesser of" two figures, one of which was based on the company's

4

current book value. Supp. JA 1373, 1376. The remaining shareholders claimed the holding company's book value was negative, meaning Buczkowski had to surrender his shares for a total of $0.

Buczkowski did not agree. Instead, in May 2016, Buczkowski himself sent a letter addressed to the holding company, as well as its majority shareholder and sole director. The subject line was "Shareholder Demand and Request to Inspect Corporate Records," and the letter's first sentence said Buczkowski was writing "in my capacity as a minority shareholder of Madison Mechanical OS Corp."—the holding company. JA 314. The letter "demand[ed]" the holding company's board of directors "vote to institute legal action against" its other four original shareholders and the new company and said that "[s]hould the Board fail to do so," Buczkowski would "bring a derivative action on behalf of" the holding company. JA 315. The letter also asked that the holding company provide Buczkowski with copies of, or access to, various corporate records.

The holding company's board declined to file the requested suit and refused Buczkowski's request to inspect company records. A few weeks later, Buczkowski filed a 14-count complaint in Maryland court against the new company, the holding company, the holding company's other four original shareholders, and the new company's fifth member. Two years later, the parties settled Buczkowski's suit for $725,000.

B.

While Buczkowski's suit was pending, the defendants in that case filed a new action in Maryland court, asserting Twin City breached its contractual obligations by failing to defend and indemnify them against the Buczkowski action. Twin City removed the case to

5

federal court based on diversity jurisdiction. See 28 U.S.C. § 1441(a).[3] Twin City also counterclaimed, seeking a declaratory judgment that it did not owe coverage.

The district court granted summary judgment for Twin City, concluding it did not owe coverage under the 2015 policy. As relevant here, the court held Buczkowski's claims were not for an Employment Practices Wrongful Act as defined by the policy.[4] The court emphasized that Buczkowski's initial demand letter did "not mention employment, termination, or any employment-related relief." JA 1360. The court also concluded that even if the complaint Buczkowski ultimately filed were "considered as a part of the claim first filed on November 11, 2015, it too fails to allege a claim for wrongful termination." JA 1361. We review the district court's decision de novo. *Lee Graham Shopping Ctr., LLC v. Est. of Kirsch*, 777 F.3d 678, 681 (4th Cir. 2015).

---

[3] The complaint also named Buczkowski as a defendant, which ordinarily would preclude removal on two separate grounds. First, it would destroy complete diversity because, like plaintiffs, Buczkowski is a Maryland citizen. See 28 U.S.C. § 1332(a)(1); *Strawbridge v. Curtis*, 7 U.S. 267 (1806). Second, diversity-based removal is forbidden if any defendant "is a citizen of the State in which such action is brought" (here, Maryland). 28 U.S.C. § 1441(b)(2).

We still conclude removal was proper. Federal courts "must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). Buczkowski was a nominal party because plaintiffs neither asserted any claims nor sought any relief against him, and Buczkowski had resolved his own claims against plaintiffs by the time the district court entered judgment for Twin City. Because this "suit can be resolved without affecting [Buczkowski] in any reasonably foreseeable way," *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 260 (4th Cir. 2013), his citizenship may be disregarded.

[4] The district court also rejected plaintiffs' argument that they were entitled to coverage under a Directors, Officers, and Entity Liability provision. Plaintiffs do not challenge that ruling on appeal, so we do not consider it.

6

II.

Because this case is in federal court based on diversity jurisdiction, we follow state law in interpreting the insurance contract at issue. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Here, everyone agrees the relevant jurisdiction is Maryland. In Maryland, "the foremost rule of construction is to apply the terms of the insurance contract itself" and courts should "give the words of the policy their customary, ordinary, and accepted meaning." *Springer v. Erie Ins. Exch.*, 94 A.3d 75, 85 (Md. 2014) (quotation marks omitted). Maryland courts do "not construe insurance policies as a matter of course against the insurer." *MAMSI Life & Health Ins. Co. v. Callaway*, 825 A.2d 995, 1005 (Md. 2003). Rather, only when a policy term is "ambiguous" will a Maryland court "construe that term against the drafter of the contract which is usually the insurer." *Id.* at 1006.[5]

A.

The 2015 policy covers, as relevant here, "an Employment Practices Claim . . . for an Employment Practices Wrongful Act by the Insureds." JA 228.[6] An "Employment Practices Claim" includes any "written demand for monetary damages or other civil relief

---

[5] Throughout their briefs, plaintiffs assert that Twin City initially advised that Buczkowski's claims were at least partially covered under the 2015 policy. At oral argument, however, plaintiffs confirmed they are not making any sort of estoppel argument. So, like the district court, our job is to construe the policy as written.

[6] Coverage is limited to claims "first made against the Insureds during the Policy Period or Extended Reporting Period, if applicable." JA 228; see JA 214–15 (describing rules for relation back of certain interrelated wrongful acts). Like the district court, we assume without deciding that all relevant communications from Buczkowski were part of a single claim first made during the relevant policy period.

7

commenced by the receipt of such demand" or a "civil proceeding" "commenced by the service of a complaint." *Id*. An "Employment Practices Wrongful Act," in turn, includes any act "involving any . . . wrongful dismissal, discharge, or termination of employment . . . or wrongful deprivation of career opportunity." JA 229.

Because much of the parties' briefing centers on whether Buczkowski ever alleged "wrongful dismissal, discharge, or termination of employment," it is important to make one point at the outset. "Wrongful discharge" and "wrongful termination" are not amorphous phrases referencing any claimed unfairness related to a person's dismissal from a job. To the contrary, those terms describe a specific tort with a customary meaning under Maryland law. That tort—which represents an "*exception to* the well-established principle that an at-will employee may be discharged by his employer for any reason, or no reason at all"—allows an at-will employee to sue a former employer when the employee's dismissal "violate[s] some clear mandate of public policy." *Wholey v. Sears Roebuck*, 803 A.2d 482, 488–89 (Md. 2002) (emphasis added); see *Yuan v. Johns Hopkins Univ.*, 157 A.3d 254, 259 (Md. 2017) (using wrongful discharge and wrongful termination interchangeably).

B.

To determine whether Twin Cities must provide coverage, we ask whether any of the documents cited by plaintiffs constituted a claim involving wrongful discharge or termination under the 2015 policy. The answer, we conclude, is no.

1.

We start with the November 2015 letter. As the district court observed, that letter did "not mention employment, termination, or any employment-related relief." JA 1360. Instead, it asserted a classic, shareholder-based breach of fiduciary duty claim, objecting to the diversion of "business and client base" from a company in which Buczkowski held stock and demanded that the recipients "cease and desist any such action to divert any corporate opportunity" without Buczkowski's consent. JA 293.

Plaintiffs respond that the November 2015 letter "did not need to" mention Buczkowski's employment because it "was part and parcel of his ownership" and because Buczkowski "was well aware" when his lawyer sent the November 2015 letter "that [Buczkowski's] termination was imminent." Pls. Br. 5. We are unpersuaded. To be sure, Maryland courts permit use of "extrinsic evidence" to "establish a potentiality of coverage under an insurance policy." *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 110 (Md. 2004). But such evidence must "relate in some manner to a cause of action *actually alleged*" in the original demand document. *Id.* (quotation marks omitted). A claimant cannot add "a new, unasserted claim." *Id.* (quotation marks omitted). That is precisely what plaintiffs seek to do here.

2.

Plaintiffs also assert that Buczkowski's May 2016 letter asserted a covered claim. Pls. Br. 20. Specifically, plaintiffs cite the letter's reference to the "terminat[ion]" of Buczkowski's employment, "allegedly for cause, despite the fact that there was no cause for my termination." *Id.* (quoting JA 315).

9

It does not appear plaintiffs ever made that argument before the district court, and the court did not address the May 2016 letter in its opinion. For that reason, any such argument appears forfeited. See *Ferguson v. City of Charleston*, 308 F.3d 380, 396 (4th Cir. 2002) ("It is not clear to us whether Appellees made this assertion before the district court; if they did not, the argument is forfeited.").

At any rate, we conclude the May 2016 letter likewise claimed no "wrongful dismissal" or "wrongful termination." The common thread throughout that letter is reflected in its subject line and first sentence: This is a demand letter written by a shareholder about a shareholder's grievances with corporate management. Although the letter asserted there was "no cause for [Buczkowski's] termination," the letter neither alleged Buczkowski's termination *was itself unlawful* nor requested any employment-related relief. JA 315. Instead, the letter claimed the recipients' actions, including their characterization of Buczkowski's termination, "constitute[d] breaches of [their] fiduciary duties to [the holding company] and [Buczkowski]" and gave rise to six causes of action, all of which would benefit the corporation or Buczkowski in his capacity as a shareholder. *Id.* Finally, both the demand that the corporation file suit and the request to inspect the holding company's records specifically referenced Buczkowski's status "as a minority shareholder of" the holding company while saying nothing about his status as an employee. JA 314; see JA 315 ("In addition, as a 13% shareholder of [the holding company] . . .").

### 3.

We also agree with the district court that the complaint Buczkowski ultimately filed in Maryland state court did not assert a covered claim under the policy. Buczkowski's

employment position as Chief Financial Officer was with the *operating* company (Madison Mechanical, Inc.), but Buczkowski did not seek any relief against the operating company nor did his complaint even name it as a defendant. What is more, 13 of the complaint's 14 counts concededly had nothing to do with Buczkowski's employment and instead asserted claims for harms arising out of his status as a shareholder.

Plaintiffs seek to hang their hat on the first count, which was captioned "Declaratory Judgment" but also sought various forms of injunctive relief. JA 45–49. Among other things, that count asked the court to declare "that [Buczkowski] remains an employee and a shareholder of [the holding company]" and to "issue injunctive relief ordering the Defendants to take any and all appropriate action to recognize [Buczkowski]'s continued employment and ownership of shares in [the holding company]." JA 49.

Yet, here too, the relevant requests for relief were grounded in and sought "to remedy the corporate ownership-related counts." JA 1362. The factual allegations in count one lasered in on Buczkowski's status as a stockholder, described the stockholder agreement to which Buczkowski was a party, and detailed the agreement's provision that was triggered by Buczkowski's for-cause termination, purportedly compelling him to sell back his shares. Although the complaint repeatedly asserted there was "no cause for Mr. Buczkowski's termination," JA 47, the complaint never alleged his termination violated Maryland law, constituted "wrongful termination" or "wrongful discharge," or violated any "clear mandate of public policy." *Wholey*, 803 A.2d at 489. Instead, the complaint asserted that "[t]he effort to terminate Mr. Buczkowski 'for cause' was an attempt to force a transfer of his stock in [the holding company]" and thus "constitute[d] a breach *of the Stockholders*

11

*Agreement*." JA 47, 52 (emphasis added). And Buczkowski did not allege the tort of wrongful discharge or wrongful termination for good reason: there is simply no basis in the record to think he was fired for a reason Maryland tort law would recognize as actionable. In short, the 2015 policy does not cover the claims Buczkowski chose to bring.[7]

\* \* \*

The documents Buczkowski sent to plaintiffs sought to remedy shareholder-related claims, including oppression of a minority shareholder and breach of fiduciary duty. There are insurance policies covering those sorts of claims, but the policy before us is not one of them. The district court's judgment is therefore

*AFFIRMED*.

---

[7] We flag two other issues we do not address because plaintiffs failed to preserve them for appellate review. *First*, Maryland law distinguishes between an insurer's duty to indemnify and its duty to defend, requiring a defense against all claims even *potentially* covered by an insurance policy rather than just those ultimately found to be covered. See *Walk*, 851 A.2d at 106 (discussing difference between the duty to indemnify and the duty to defend). But plaintiffs' opening brief made no argument that there was a duty to defend separate from the duty to indemnify, and the brief's glancing reference to the rules governing "potentiality of coverage," Pls. Br. 26, is precisely the sort of "passing shot" that fails to preserve an issue for appellate review. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (quotation marks omitted).

*Second*, the facts section of plaintiffs' opening brief quotes from the settlement agreement between Buczkowski and plaintiffs in the underlying litigation, which purports to characterize that litigation as "requesting a declaratory judgment for wrongful termination of Buczkowski's employment." Pls. Br. 8. But the rest of plaintiffs' opening brief never mentions the settlement agreement, much less develops any argument that the settlement agreement itself triggered a duty to provide coverage or bears on the proper interpretation of the complaint. Here too, it is not our role to make plaintiffs' arguments for them, and plaintiffs' efforts to begin to develop such an argument for the first time in their reply brief come too late. See *Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996).